```
 1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF MARYLAND
 2                             NORTHERN DIVISION

 3      UNITED STATES OF AMERICA,)
                                 )
 4           vs.                 )   CRIMINAL CASE NO. CCB-17-106
                                 )
 5      WAYNE EARL JENKINS,      )
        DANIEL THOMAS HERSL,     )        MOTIONS HEARING
 6      and                      )
        MARCUS ROOSEVELT TAYLOR, )
 7           Defendants.         )
        _____)
 8
                                   Tuesday, December 19, 2017
 9                                      Courtroom 1A
                                      Baltimore, Maryland
10
        BEFORE:  THE HONORABLE CATHERINE C. BLAKE, JUDGE
11
        For the Plaintiff:
12
        Leo Wise, Esquire
13      Derek Hines, Esquire
        Assistant United States Attorneys
14
        For the Defendant, Daniel Hersl:
15
        William Purpura, Esquire
16
        For the Defendant, Wayne Jenkins:
17
        Steven Levin, Esquire
18
        For the Defendant, Marcus Taylor:
19
        Jenifer Wicks, Esquire
20
        Also Present:
21      John Siracki, Task Force Operator
        Thomas Rafter, Esquire
22      _____
                                Reported by:
23
                            Nadine M. Gazic, RMR, CRR
24                      Federal Official Court Reporter
                        101 W. Lombard Street, 4th Floor
25                         Baltimore, Maryland  21201
                                410-962-4753
```

```
 1              T A B L E   O F   C O N T E N T S
 2     Motions Hearing
 3     WITNESS              DIRECT     CROSS      REDIRECT     RECROSS
 4     Matthew Vilcek
 5          By Mr. Hines:   4
 6          By Ms. Wicks:  10
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**PROCEEDINGS**

**(2:38 p.m.)**

1

2

3      **THE COURT:**  Would you like to call the case?

4      **MR. WISE:**  Thank you, Your Honor.  The case is

5  United States of America versus Jenkins, Hersl and Taylor.

6  Criminal Number CCB-17-106.  Assistant United States Attorney

7  Leo Wise and Derek Hines and with us at counsel table is task

8  force officer John Siracki and we're here this afternoon for a

9  motions hearing.

10     **THE COURT:**  All right, thank you.

11     **MR. PURPURA:**  Judge Blake, good afternoon.  William

12  Purpura.  I'm joined at trial table with Thomas Rafter.  Mr.

13  Rafter is a member of this Bar and he hopes to be a member of

14  the CJA panel and he's looking for some experience, so he's

15  second chair to me in this trial.  We're here to represent

16  Daniel Hersl.

17     **THE COURT:**  All right, glad to have both of you, and

18  Mr. Hersl.

19     **MR. LEVIN:**  Good afternoon, Your Honor.  Steven

20  Levin on behalf of Wayne Jenkins who is standing to my right.

21     **THE COURT:**  All right, thank you.

22     **MS. WICKS:**  Good afternoon, Your Honor.  Jenifer

23  Wicks on behalf of Mr. Taylor who is standing to my right.

24     **THE COURT:**  Glad to have all of you.  You may be

25  seated, please.

1          So we are here for a motions hearing.  I know there are a

2     number of issues that have been raised.  It appears to me

3     there's only one that requires the taking of testimony which

4     would be the Motion to Suppress statement filed on behalf of

5     Mr. Taylor.  So ordinarily we would go ahead and proceed by

6     hearing the motion that requires evidence to begin with, but

7     unless anybody has any other plan, let's go ahead and hear the

8     Motion to Suppress.  This is Mr. Taylor's motion number 6, I

9     believe, Motion to Suppress statement in evidence.

10          **MR. HINES:**  Your Honor, Special Agent Matthew Vilcek

11     took the custodial statement, so we'd like to call him as a

12     witness.

13          **THE COURT:**  All right.

14          **THE CLERK:**  Please remain standing and raise your

15     right hand.

16          **(Witness sworn.)**

17          **THE CLERK:**  Thank you, you may be seated.  Please

18     speak clearly into the microphone.  Please state your name and

19     spell your name for the record.

20          **THE WITNESS:**  Matthew J. Vilcek.  V-i-l-c-e-k.

21          **THE CLERK:**  Thank you.

22          **D I R E C T   E X A M I N A T I O N**

23     BY MR. HINES:

24     Q.  Mr. Vilcek, where do you work?

25     A.  I'm a special agent with the Federal Bureau of

1    Investigation.

2    Q.   How long have you been with the FBI?

3    A.   I just passed 18 years.

4    Q.   And what kinds of cases do you predominantly work now?

5    A.   I worked a number of different cases in the Baltimore

6    division, including public corruption.  Most of my time has

7    been spent working in violent crimes against children matters.

8          **MR. HINES:**  Sorry, Your Honor, just having some

9    technical difficulties.

10   **BY MR. HINES:**

11   Q.   Special Agent Vilcek, did you participate or assist in

12   the interviews of Baltimore Police Department officers on

13   March 1, 2017?

14   A.   Yes, sir.

15   Q.   What was your role on that day?

16   A.   I was one of the agents selected to be an interviewer and

17   I interviewed Marcus Taylor on that date.

18   Q.   And can you describe or summarize your interactions with

19   Mr. Taylor before the interview began officially?

20   A.   The arrest operation occurred prior to my involvement.  I

21   believe a tactical team had taken custody of Mr. Taylor and he

22   was ushered into a room within the Internal Affairs Bureau at

23   the Baltimore City Police Department.  He had been placed into

24   a separate room pending availability of an interview room that

25   was properly outfitted with video recording equipment.

Vilcek - direct          Motions Hearing                              6

1    Q.   Did you engage in any substantive conversations with

2    Detective Taylor prior to him being placed in an interview

3    room?

4    A.   Nothing substantive.  It was communicated to me that he

5    was experiencing slight health issues, that he had been

6    examined --

7              **MS. WICKS:**  Objection, nonresponsive.

8              **THE COURT:**  Overruled.

9    A.   And we had just made sure that he was feeling well.  We

10   had communicated to him that we could take him to the

11   restroom, we could provide him with water if he needed it.

12   And I believe we did both of those things during that time and

13   explained to him that we were just waiting for a room to

14   become available.

15   Q.   And why was the Internal Affairs Office used to interview

16   Detective Taylor and other folks on this day?

17   A.   It was a tactic.  It was a place where police officers

18   routinely respond for training or for inquiries.  They were

19   required to remove their firearm upon entering the building.

20   It was a matter of safety, so I believe this is why that place

21   was selected.

22   Q.   And I'm showing you what's been marked as Government's

23   Exhibit 1.  Do you recognize Government's Exhibit 1?

24   A.   Yes, sir.

25   Q.   What is Government's Exhibit 1?

```
 1    A.    It's a document that contains the criminal case number,

 2    indicates the pretrial motions and contains a description of

 3    each of the items listed as exhibits.

 4    Q.    Flip to the next tab, that's actually --

 5    A.    Oh, number one -- this is a transcript of the audio

 6    recording involving Mr. Taylor.

 7    Q.    Okay.  And have you reviewed that transcript of the audio

 8    recording?

 9    A.    I have, up to minute 9:40, I believe.

10    Q.    And is that transcript a fair and accurate summary of the

11    first approximately nine minutes of the interview of Mr.

12    Taylor?

13    A.    Yes, sir.

14    Q.    Did you make any threats to Mr. Taylor during those first

15    nine minutes?

16    A.    Not at all.

17    Q.    Did the interview continue after those nine minutes?

18    A.    Yes, sir.

19    Q.    Were any threats made against Mr. Taylor to induce his

20    statements?

21    A.    No.

22    Q.    During those first nine minutes did you read Mr. Taylor

23    his Miranda rights?

24    A.    I did.

25    Q.    And can you find on there where you read him his Miranda
```

1    rights on the transcription?

2    A.    It's in the vicinity -- the counter number reading is 6

3    minutes and 46 seconds.  It followed the reading showing Mr.

4    Taylor the charges against him, the charging document and then

5    we went on to read him the Miranda form.

6    Q.    And can you read -- starting with the bold -- before we

7    ask you any questions, what you said?

8    A.         Before we ask you any questions you must

9               understand your rights.  The matter under

10              investigation is criminal in nature and

11              constitutes one or more violations of law.  You

12              are not being compelled to provide information

13              regarding your official duties pursuant to an

14              agency disciplinary investigation or proceeding by

15              your employer.  You have the right to remain

16              silent.  Anything you say can be used against you

17              in court.  You have the right to talk to a lawyer

18              for advice before we ask you any questions.  You

19              have the right to have a lawyer present with you

20              during questioning.  If you cannot afford a

21              lawyer, one will be appointed for you before any

22              questioning if you wish and if you decide to

23              answer any questions now without a lawyer present,

24              you have the right to stop answering at any time.

25         The consent form portion of the form that reads --

```
 1                        That I've read this statement of my rights and I

 2                        understand what my rights are and at this time I'm

 3                        willing to answer questions without a lawyer

 4                        present.  So if you're willing to do that, you

 5                        want to speak with us, initial each line up here

 6                        that you understand and we'll make this possible

 7                        for you and then you can just sign.  So if you

 8                        could just -- and start initial here and then just

 9                        each line down below.

10      Q.   And does Mr. Taylor acknowledge his Miranda rights?

11      A.   He does.

12      Q.   Does he waive his Miranda rights?

13      A.   He did.  He initialed each line of the form and then

14      signed it.

15      Q.   And you can turn to Exhibit 2?  Do you recognize Exhibit

16      2?

17      A.   I do.

18      Q.   What is Exhibit 2?

19      A.   It's the warning and advice of rights to provide

20      information on a voluntary basis.

21      Q.   And are those in the left hand column, what are those

22      initials?

23      A.   Those are Mr. Taylor's initials.

24      Q.   And where it says "signed," whose signature is that?

25      A.   Marcus Taylor.
```

1    Q.   And you witnessed him sign this consent form?

2    A.   I did.

3               **MR. HINES:**  Your Honor, no further questions on

4    direct.

5               **THE COURT:**  All right, thank you.

6               **MS. WICKS:**  May I, Your Honor?

7               **THE COURT:**  Ms. Wicks?  Of course.

8          **C R O S S - E X A M I N A T I O N**

9    BY MS. WICKS:

10   Q.   Good afternoon, Agent.

11   A.   Good afternoon, ma'am.

12   Q.   So your first dealing with Mr. Taylor was on March 1st of

13   this year?

14   A.   Correct.

15   Q.   Okay.  And as part of this tactic that the team was

16   using, someone from Baltimore City Police Department contacted

17   Mr. Taylor the day before, correct?

18   A.   It's my understanding, yes.

19   Q.   Okay.  It's your understanding.  You weren't present for

20   that conversation, correct?

21   A.   Correct.

22   Q.   You were told what occurred during that conversation?

23   A.   We were advised that they would be arriving on that date

24   for what they thought was a meeting at Internal Affairs.

25   Q.   Okay.  So you were not told what occurred during that

```
 1     conversation, correct?

 2     A.   No.

 3     Q.   Okay.  And were you made aware that Mr. Taylor asked if

 4     he needed a lawyer for that interview?

 5     A.   Can you repeat the question?

 6     Q.   Were you made aware that Mr. Taylor during that phone

 7     conversation asked if he needed a lawyer for the interview

 8     that was being conducted at the Internal Affairs Office on

 9     March 1st?

10     A.   No.

11     Q.   Were you aware why he was told to respond to that

12     location?

13     A.   It was our understanding that -- and I had been involved

14     in operations like this in the past --

15     Q.   Well, I'm not asking you about the past.  I'm asking

16     about this particular day.

17     A.   That he was being brought there under some sort of rouse

18     to have some sort of meeting at Internal Affairs and that he

19     was going to be arrested on that day.

20     Q.   Okay.  And you testified that this tactic was being used

21     because it's your understanding that the IA office was a place

22     where Baltimore police officers would respond for training and

23     inquiries, correct?

24     A.   Correct.

25     Q.   And so that was information that you were told by the
```

1    Baltimore Police Department about why officers would respond

2    to that building, correct?

3    A.    This is what I know operationally from past experience as

4    well as in dealings with this case.

5    Q.    Okay.  So from your past experience you know that

6    training occurs in that building?

7    A.    It is my understanding that it could be training, it

8    could be for an inquiry, it could be for a number of reasons.

9    Really why they were going there was not of my interest, just

10   the fact that they were going to be there and what my role

11   was.

12   Q.    Okay.  And so since that wasn't your interest, you didn't

13   inquire as to what he was told in the telephone conversation,

14   correct?

15   A.    Correct.

16   Q.    And now you -- Court's indulgence.  Actually, if the

17   Government has number one?  Do you have number one up there,

18   sir?

19   A.    I do, ma'am.

20   Q.    Okay.  In the transcript that we just looked at on page 1

21   actually, the third line that is you speaking, there's a long

22   paragraph -- then apparently Mr. Taylor interrupts you -- then

23   you finish your paragraph so-to-speak, he agrees that you all

24   hadn't had conversations specifically about the case and you

25   indicated, we've talked about procedural things, right?

```
 1      A.    Correct.

 2      Q.    That's what you said that day, correct?

 3      A.    Correct.

 4      Q.    And so when you testified today about substance, you did

 5      talk to him about his condition on that day, correct?

 6                  THE COURT:   I'm confused by the question.

 7                  MS. WICKS:   I'm sorry.  I'll just start over.

 8      BY MS. WICKS:

 9      Q.    Before the recorder is turned on, outside of the room did

10      you have conversations with him?

11      A.    Yes.

12      Q.    Or was it someone else that had conversations with him

13      about his condition that day?

14      A.    Both.

15      Q.    Okay.  And when other people had conversations with him

16      about his condition that day, were you present when Mr. Taylor

17      was responding?

18      A.    No, ma'am.

19      Q.    Okay.  So again, this is information -- there's

20      apparently part of this information that you were present for

21      but there's part of this information that you learned from

22      other people, correct?

23      A.    Correct.

24      Q.    Okay.  And that morning, Mr. Taylor was having a hard

25      time dealing with what was going on, correct?
```

```
 1    A.    I don't know if I could describe it as a hard time.  What

 2    was communicated to me was that he was having some sort of

 3    medical issue, I believe somewhat similar to an asthmatic

 4    reaction, that he was treated and that when I had arrived,

 5    that the matter had been resolved.

 6    Q.    Okay.  So he received medical attention that morning at

 7    that Internal Affairs Office, correct?

 8    A.    What I was told, yes.

 9    Q.    What you were told.  And you were told that he was

10    cleared by medical staff, correct?

11    A.    That there was no longer an issue, correct.

12    Q.    Because you wouldn't have interviewed him if there had

13    been an issue, right?

14    A.    Correct.

15    Q.    And based on the information that you received from other

16    people and what you observed, you then proceeded to speak with

17    him and then eventually at about 6 minutes your testimony --

18    there's I'll agree some of this is people leaving the room --

19    but at about a little over 6 minutes you read him his rights,

20    correct?

21    A.    Yes, ma'am.

22    Q.    And when you were interviewing him, were there other --

23    were there other -- other than Mr. Taylor, were there other

24    people that worked for the Baltimore Police Department present

25    either in the room or watching what was occurring?
```

1    A.   I don't know exactly who was watching.  I can assume that

2    they maybe were, but as far as in the room with me there was

3    one other special agent and Mr. Taylor.

4    Q.   Okay.  And you also testified that the procedure when

5    officers come to that building is that there's a place where

6    they put up their guns, correct?

7    A.   That was my understanding, yes.

8    Q.   Okay.  And did you learn from any source that day that

9    Mr. Taylor had left his gun in the car?

10   A.   I don't recall that.

11   Q.   Okay.  Did you receive information that he was unarmed by

12   the time he got into the room with you?

13   A.   That was the pre-planning in our communications for the

14   operation prior to that event happening, that was the plan for

15   that to happen.  Our SWAT team was involved with the arrest of

16   these individuals.  I spent ten years on the SWAT team, so I

17   had a fair understanding that he would be unarmed when we

18   showed up, yes.

19   Q.   Okay, but part of the planning here is you didn't know

20   what was said to him the day before and what he said, correct?

21   A.   Correct.

22   Q.   Okay.  And -- Court's indulgence.  Now, when the -- there

23   were IA officers that were aware at least the day before that

24   Mr. Taylor and other officers were being asked to come to that

25   building on March 1st, correct?

1    A.    We have officers on the task force in our office, so yes.

2    Q.    Okay.  Well there was a certain -- because of the

3    circumstances of this investigation, there was limited

4    information that Baltimore police -- Baltimore Police

5    Department had about what was happening on March 1st, correct?

6    A.    That would be logical, yes.

7    Q.    Okay.  And that's what happened on March 1st, correct,

8    and the dates coming up to March 1st?

9    A.    Regarding who knew what at that time, I'm not privy to

10   that information.  All I know is that typically in these types

11   of investigations, obviously due to the sensitivity,

12   information is kept close hold, both by the FBI and the

13   Baltimore City Police Department.

14   Q.    So do you know -- the person that contacted Mr. Taylor to

15   tell him to come to the office on March 1st, was that person

16   aware that Mr. Taylor was getting arrested?

17   A.    I don't know.

18   Q.    Or was he part of the -- was he being tricked as well?

19   A.    I don't know who called him on that day.

20   Q.    Was that part of the plan for the day?

21   A.    It was our understanding that they were to respond to

22   that facility for some purpose.

23   Q.    Okay.  And you don't know if the person that contacted

24   him to tell him to come, if that person was aware or not that

25   Mr. Taylor was actually being arrested when he came there,

 1    correct?

 2    A.    I don't know who the person is, no, ma'am.

 3    Q.    Okay, thank you.  No further questions, Your Honor.

 4            **THE COURT:**  Okay.  Any further questions, Mr. Hines?

 5            **MR. HINES:**  No, Your Honor.  We offer the transcript

 6    as a timesaving device.  We also have the video of

 7    approximately three hours if it's of any interest to the

 8    Court, however otherwise we'll rest.

 9            **THE COURT:**  I think Government Exhibit 1, the

10    transcript and 2, the warning of advice of rights are

11    sufficient for this.

12        Okay, thank you.  You can step down.  Ms. Wicks, do you

13    plan on calling any witnesses or presenting any evidence on

14    this motion?

15            **MS. WICKS:**  No, Your Honor.  We are not calling any

16    witnesses or presenting evidence and I'd submit.

17            **THE COURT:**  And you'll submit on your papers?

18            **MS. WICKS:**  Yes.

19            **THE COURT:**  Okay.  Anything you want to say, Mr.

20    Hines?

21            **MR. HINES:**  No, Your Honor.

22            **THE COURT:**  Okay.  All right, somebody else want to

23    say anything?  No?  Okay.

24            Okay, well this is a Motion to Suppress statements

25    and I appreciate that it is a motion that needs to be brought

1    and be heard in advance of the trial, but the record in front

2    of me now shows absolutely no reason to suppress the statement

3    made by Mr. Taylor on March 1, 2017.  It appears that he was

4    properly advised of his Miranda rights, understood them,

5    acknowledged them.

6         It appears that whatever medical condition he may have

7    been suffering from, breathing or asthma, something of that

8    nature, had been resolved.  He was offered a restroom, a drink

9    of water, all those sorts of things.  There's no evidence of

10   any threat or promise being made to him, so there's no

11   coercion.  There's no overbearing of his will.  So the

12   statement is voluntary in a constitutional sense as well as

13   being taken in compliance with Miranda, so I will be denying

14   that motion.

15        Okay, Ms. Wicks, do you want to be -- there are a number

16   of motions that you filed on behalf of Mr. Taylor

17   additionally.  Would you like to be heard on those?

18        **MS. WICKS:**  Your Honor, I think one, for example,

19   208 I didn't quite understand the Government's response, but

20   the purpose of that is clearly not to waste the Court's time.

21   I know other counsel filed similar motions.

22        **THE COURT:**  Well, let me -- let me get them -- let's

23   just maybe just go down the list and then I won't miss any.

24   I've got a motion for bill of particulars.

25        **MS. WICKS:**  I'm submitting on that one.

1      **THE COURT:** All right, number 205.  And on that I

2    will deny.  It appears to me that there is sufficient detail

3    in the superseding indictment when combined with the discovery

4    to make a bill of particulars not required in this instance.

5         Let's see, the Motion to Dismiss counts 1, 2, 3 and 4,

6    that is based on the -- you've challenged to the RICO statute?

7         **MS. WICKS:** Well, so I'm submitting on Counts 1 and

8    2.  3 and 4 really deal with Hersl's motions and I know Mr.

9    Purpura has argument, so I am asking to join those and those

10   deal with my Counts 3 and 4.

11        **THE COURT:** Okay, all right.  I understand that

12   then, thank you.  I'll deny it as to Counts 1 and 2.  I don't

13   think there's any infirmities in the RICO statute itself.

14   We'll defer and I'll understand that you're adopting the

15   argument on behalf of Mr. Hersl as far as Counts 3 and 4.

16   We'll get to that.

17        Then there was a Motion to Exclude evidence intrinsic to

18   the charged criminal acts but not charged in the indictment.

19   I will tell you how I understood that and you can correct me

20   if I'm wrong.  It's essentially a 404(b), but you're

21   anticipating the possibility that something you might think of

22   as 404(b) would be labeled intrinsic and therefore admissible

23   by the Government and you want to head that off.

24        **MS. WICKS:** I do.

25        **THE COURT:** Okay.  So I understand because there's

1   also essentially a 404(b) motion I believe on behalf of Mr.

2   Hersl which would be -- that's document number 226.  Your is

3   207.  My understanding is the Government's response there is

4   that it's premature, that if there is going to be 404(b)

5   evidence it would be contained in the Jencks which is not due

6   to be turned over until two weeks before trial.

7        **MR. WISE:**  Your Honor, so our position is that there

8   will be additional information in the Jencks as one would

9   expect.  Whether one characterizes that as 404(b) or

10  intrinsic, it's just there's simply going to be more and

11  that's what's been agreed to by the parties that that would be

12  produced two weeks before trial.  So we think it's not ripe.

13       **THE COURT:**  But other than what may be contained in

14  the Jencks which is going to be provided two weeks before

15  trial, you are not sitting there thinking to yourself that you

16  have additional 404(b) evidence that you're just not

17  disclosing yet?

18       **MR. WISE:**  That's right, exactly.

19       **THE COURT:**  All right, it will be in the Jencks.  So

20  we can argue about it if we need to when we see what's in the

21  Jencks.  All right, so we'll defer on 404(b) issues.

22       **MR. PURPURA:**  Judge?

23       **THE COURT:**  Yes.

24       **MR. PURPURA:**  Respectfully on the 404(b) issue,

25  obviously there's a discovery agreement which has been signed

1   in this case, but this case in particular as to Mr. Hersl

2   there was an original indictment, now a superseding

3   indictment.  Some of the overt acts, some of the charged

4   substantive acts have changed.  And it's really a due process

5   consideration at this point.  We have to be prepared for trial

6   so we're asking as 404(b) says, reasonable notice.  And I

7   certainly think that now three weeks out or three-and-a-half

8   weeks out with Christmas and New Years coming up is reasonable

9   notice.  There's no reason, good reason for the Government to

10  hold back whether they think it's intrinsic or whether it's

11  404(b), these particular acts to identify them so we can be

12  prepared.

13       This is going to be multiple trials in one trial, at

14  least six or seven different thefts and who knows what else

15  there may be in this case.  So it's multiple acts and it's

16  very difficult to be prepared unless we have some notice.  And

17  it's just a basic due process consideration, reasonableness,

18  three weeks out, holidays coming up.  It's reasonable today.

19  There's no threat to security.  There's no threat to

20  witnesses.  That's what we're asking for, thank you.

21       **MR. WISE:**  We would disagree with the last

22  statement, Your Honor.  Witnesses are very fearful in this

23  case of the fact that they will be testifying against police

24  officers.  Almost to a person the witnesses have said that.

25  And so we agreed on a Jencks deadline, agreed on it.  That's

1    what the arrangement we came to that's two weeks in advance

2    and that will be the Jencks, both grand jury material and 302s

3    will be the vehicle that additional information will be

4    provided in.  And I'm always reluctant to characterize because

5    it is inevitably used against me later, you know, something

6    that defense counsel might characterize as 404(b) we would not

7    necessarily agree with something that we think is squarely

8    within the four corners of the indictment, they may say is

9    not, but the place where -- the vehicle that comes in is in

10   the Jencks material and then if there are issues as Your Honor

11   has said that need to be addressed through motions in limine

12   or something, the schedule contemplates that.

13           **MR. PURPURA:**  Your Honor, so I can be abundantly

14   clear, I'm not asking for early Jencks.  What I'm asking for

15   are dates of incidents and claimed incidents.  That's it.  So

16   give me a date in 2015 or way back in 2014 or 2016 as to what

17   particular incident.  I don't need anything more than that,

18   but we have to have some sort of notice to be prepared.  And

19   that's not unreasonable in this case.

20           **MR. WISE:**  I think the issue is, Your Honor, that

21   there are certain information that once disclosed will make it

22   clear who was talking to us and what they are talking about.

23   And so that's why we've produced Rule 16 discovery in the form

24   of incident reports and statements of probable cause and

25   property receipts and evidence like that, but we will produce

1    testimonial evidence on the Jencks schedule.

2         If the purpose of all this is notice, I think there's

3    been abundant notice.  It was a detailed original indictment,

4    a detailed superseding indictment with specific names, with

5    specific dates.  And the purpose of an indictment is simply to

6    put the defendant on notice.  So that we think has happened in

7    spades here.  We even have used initials of people.  We didn't

8    say "victim one," so these are all people that the defendants

9    interacted with.  We even gave them initials so there's no --

10   there's really no surprise here and they can track those

11   initials back to the incident reports and the statements of

12   probable cause.  And we did all that deliberately so that we

13   could give them maximum information and notice while at the

14   same time, respecting the concerns that the witnesses have.

15              **THE COURT:**  Okay.

16         **MR. PURPURA:**  Judge Blake, I don't want to keep on

17   jumping up and down like a Jack in the Box, but as in my

18   404(b) motion I stated and as I mentioned to the Court

19   earlier, the Government has changed and at least it appears --

20              **THE COURT:**  --to your benefit.

21         **MR. PURPURA:**  Well, I'm not sure.  If they're not

22   going to use those acts they alleged in the first indictment

23   that's fine.  But what happens now two weeks out of trial to

24   say now I get notice that, you know those acts we had in there

25   before, some of the substantive acts and some of the overt

1    acts, we find those to be intrinsic even though we didn't

2    charge them.  We're going to use them.  And I'm saying that's

3    kind of late notice for that and that's all.

4         **THE COURT:**  Whatever that was, you're on notice of

5    it because you knew it was there to begin with and now it's

6    out.

7         I'm going to -- I will repeat my ruling, I am deferring

8    on the 404(b).  I think you have an agreement for two weeks of

9    Jencks.  I think there are valid witness concerns.  That will

10   not certainly preclude you, Mr. Purpura or anyone else from

11   letting me know if there is something in the Jencks production

12   that is so unexpected and therefore prejudicial and hard for

13   you to meet in advance.  I expect I will hear from you at that

14   point if that sort of situation arises.

15        **MR. PURPURA:**  Thank you, you will.

16        **THE COURT:**  All right.  Let's see.  Continuing or

17   going now to the other pretrial motions filed on behalf of Mr.

18   Hersl, there is a motion to dismiss Count 5 as duplicitous,

19   that was ECF number 203.  Do you want to be heard on that?

20        **MR. PURPURA:**  I do, Your Honor.  And just prior to

21   that, I would as I did file a motion to join just for the

22   record, I am joining Ms. Wicks or Mr. Taylor's motion as to

23   the RICO statute.

24        **THE COURT:**  Sure, okay, yes, I'm sorry.  You did,

25   number 202 is your motion to adopt and that also 208 was Ms.

1        Wicks's motion to adopt on behalf of her client.

2            So, to the extent applicable to the other defendants,

3        that's fine.

4            **MR. PURPURA:**  Your Honor, if I may, obviously you've

5        received our writings on this and I've reviewed the

6        Government's writing, their response and basically I think

7        probably the simple stupid formula works on this particular

8        count, duplicitous indictment charges more than one offense in

9        a single count.

10           I read the Government's response and respectfully, I

11       think that misses the point completely.  The Government in

12       their response seizes upon the robbery element of 1951.  The

13       cases they cite in support of that all deal with the attack

14       pretrial on the robbery by threat of force and violence

15       portion of 1951, that the language would be duplicitous in

16       that particular portion of the robbery through threat or

17       violence.  It does not, it does not address the other two

18       separate crimes in 1951 which is extortion by force and/or

19       extortion by color of law.

20           And they do cite, the one case they do cite is the *Morgan*

21       case.  The *Morgan* case comes out of the Eastern District of

22       Michigan.  And just to show my point, I did obtain the

23       indictment which I've marked as Defense Exhibit 1 at this

24       point of the *Morgan* case and I'll put it on the overhead.  Now

25       again, this is a 1951 robbery indictment.  And strangely

1    enough, you're going to see it's identical to the way that we

2    file 1951 Hobbs Act robbery by force or threat of force in

3    this district as well as probably every other district in the

4    United States.

5        The important part comes right here where it says, Mr.

6    Morgan did unlawfully take cash and store merchandise from the

7    presence of a store employee and against her will by means of

8    actual and threatened force, violence and fear of injury.

9        Now, all that the case in Morgan was that the lawyers

10   pretrial was suggesting that this is duplicitous because

11   there's multiple ways to achieve the force.  And under *Johnson*

12   therefore they're attacking it.  That's not what we're doing

13   in this case, completely.  We are completely satisfied that

14   that robbery by force or threat of force in itself is not

15   duplicitous.

16       And it goes on to say that Otis Lee Morgan, junior robbed

17   the employee at gunpoint.  So clearly the defendant is on

18   notice that it's a robbery through force and threat of force.

19   Clearly the grand jury had -- at least a majority of the grand

20   jurors found that in this particular case there's probable

21   cause for a robbery through force or threat of force.

22       Our indictments in this district are the same for Hobbs

23   Act robbery by force or threat of force.  This is Defense

24   Exhibit number 2 coming from a recent case before Judge

25   Bennett where it says, the defendants -- and I'll get down to

1    the important part -- the defendants did unlawfully take and

2    obtain money and property from the person and presence of an

3    employee at the Liberty Gas Station at the employee's will by

4    means of actual and threatened force, violence and fear of

5    injury, immediate and future, to the employee by threatening

6    serious physical injury and death to said employee.

7         Clearly we know what the grand jury decided.  Clearly we

8    know what the elements are and what crime the defendant is

9    going to defend against in this particular case, in that case.

10        Now, what we have here for the first time that I've seen

11   and the Court can set me straight, would be our Count 5.  And

12   our Count 5 sets out three separate and distinct crimes.

13   Archive 5 cites the entire 1951 statute.  It says that

14   approximately $20,000 against such -- was taken against such

15   person's will by means of actual and threatened force of

16   violence and fear of injury, immediate and future.

17        So we have the first crime, that's the taking through

18   force and threat of force.  And then we have the second crime

19   which is the extortion by force.  And it goes on to say, and

20   with their consent induced by wrongful use of actual and

21   threatened force -- that's the second crime completely

22   different elements than the first crime in 1951.  And then the

23   third substantive crime is under color of official right.  So

24   you have literally, 1951, does have three separate and

25   distinct crimes with separate and distinct elements in the

 1       crimes.

 2            And if that's not sufficient, in the Government's own

 3       response on page 19 to a different issue, they put down on

 4       page 19, they give you the Sand and Siffert jury instruction.

 5       And lo and behold, Sand and Siffert have three separate jury

 6       instructions for the 1951 Hobbs Act robbery because there are

 7       three distinct crimes with three distinct elements in the

 8       1951.

 9            So, what I'm saying respectfully is that based on what I

10       consider the muddled and confusing indictment submitted to the

11       grand jury, we are -- first, the defendant has a Fifth

12       Amendment right to a grand jury, to have his probable cause

13       before a grand jury on this type of case.  So we know the

14       Fifth Amendment.  As much as the grand jury has been watered

15       down, this would be to completely dilute any purpose of a

16       grand jury, because we have absolutely no basis to have any

17       confidence whatsoever when an improper, duplicitous indictment

18       is submitted to a grand jury that sufficient numbers of grand

19       jurors could have found validity in any one of the three

20       separate and distinct crimes charged in 1951, whether it was

21       by force, whether it was by consent or whether it was by

22       consent through official act.  That's the Fifth Amendment.

23            The defendant himself now three weeks from trial has a

24       Fourth Amendment due process right to be informed of the

25       Government's theory of this case.  So a Fourth Amendment is

1   implicated.  We do not know whether their theory is a robbery

2   by force or threat of force, an extortion by force or threat

3   of force and/or by color of officers, since he was a police

4   officer when these thefts took place.

5       So, I'm asking the Court and I think the Court, this is

6   just abundantly clear that this is a classic duplicitous

7   indictment.  We know from the cases the Government cited, that

8   the *Morgan* case they cited what the indictment said and that

9   wasn't duplicitous.  They just misread the argument.  We know

10  from the indictments that we present here in Hobbs Act robbery

11  how Hobbs Act robberies are charged either an extortion and/or

12  a robbery itself and we know from Sand and Siffert that

13  there's three separate instructions because there's three

14  separate crimes and you don't want to confuse them as one.

15      So, for those reasons I'm asking the Court to dismiss

16  Count 5.  It should be dismissed.  Now the remedy would be the

17  Government could possibly re-file, perhaps, perhaps not since

18  we have a short time before trial, but that would be a remedy

19  because I'm not sure the Court can deal with prejudice at this

20  point, but since the trial is so close the Court could, with

21  prejudice, grant the dismissal.

22      It has an effect as well on Count 6, which is the handgun

23  violation.  Because here as the Government almost, almost

24  consents to but not quite there, they consent that if it is

25  Hobbs Act robbery under the color of law, that perhaps that's

1      not a crime of violence.

2           **THE COURT:**  That's not even one of the robbery,

3      that's not even a robbery charge at that point, that's the

4      extortion with consent under official right.

5           **MR. PURPURA:**  Right, so we don't know and then Count

6      6 would go as well.  So that's where we are.  Maybe I'm just

7      misreading things, but it seems like I said, simple stupid

8      where we are on this particular count.  And I have tried to

9      rectify with some -- I haven't hidden my defense in this case.

10     This is where I am, where are you?  Here's the facts.  Tell me

11     what you have.  But that's also for another motion.  Thank

12     you, Judge.

13          **THE COURT:**  Thank you.  Before I turn to the

14     Government, does anybody else want to be heard in -- I know

15     people are joining in to the extent it applies to them.  Any

16     additional argument?

17          **MR. LEVIN:**  No, thank you, Your Honor.  I think Mr.

18     Purpura articulated it beautifully.

19          **THE COURT:**  Okay.

20          **MS. WICKS:**  No, thank you, Your Honor.

21          **THE COURT:**  Mr. Wise?

22          **MR. WISE:**  Thank you, Your Honor.  The defendant's

23     Fourth Amendment or Fifth Amendment argument as he

24     characterizes it ignores the Supreme Court's decisions in

25     *Hamling* and *Costello* that a valid -- an indictment that is

1       valid on its face is sufficient to proceed to trial.  The

2       argument that there's some due process or Fifth Amendment

3       issue to enable a defendant to look behind the indictment and

4       invade the deliberations of the grand jury is simply not

5       supported and in fact they offer no authority for that

6       proposition.  And the Supreme Court has said just the

7       opposite.

8            Again, in *Costello*, the Supreme Court said an indictment

9       constituted by a legal and unbiased grand jury if valid on its

10      face is enough to call for the trial on the merits.  And in

11      *Hamling* the Court said, it defined that phrase valid on its

12      face as it is generally sufficient that indictments set forth

13      the offense in the words of the statute itself.

14           Now, Mr. Purpura calls the indictment muddled, but the

15      indictment word for word tracks the language of the statute

16      that the Congress passed.  And that is certainly sufficient to

17      put Mr. Hersl on notice as to the charges against him.

18           The Fourth Circuit has said and again, this is a common

19      -- this is a common phenomenon in cases that involve statutes

20      like this that it is settled that a charging document must

21      allege conjunctively the disjunctive components of an

22      underlying statute.  And that's what the Congress did with the

23      Hobbs Act.  It provided three alternative --

24           **THE COURT:**  Let me just ask you, Mr. Wise, I mean,

25      that would be true generally in any Hobbs Act robbery that we

 1    normally see.  That is not normally how indictments are

 2    brought.  I mean, I'm not sure that it's a requirement.  If it

 3    were a requirement that every one of the three ways of

 4    violating the Hobbs Act were it had to be included in the

 5    indictment there would have been a lot of dismissed

 6    indictments by now in this district.  I don't think it has to

 7    be.

 8              **MR. WISE:**  It's not a requirement, but where there

 9    are facts that a jury could find satisfied any one of the

10    three variants -- we'll use that word -- then it is

11    appropriate to charge it in the way that it has been charged.

12    Obviously the difference between Hobbs Act robbery and

13    extortion is principally one of consent.  And the difference

14    between extortion, violent extortion and extortion under color

15    of official right is violence.

16         There will be facts presented to a jury that a jury could

17    conclude and we'll submit a special verdict on this as we've

18    said, that violence was applied and Hobbs Act robbery was made

19    out.  That violence was applied, but there was consent given

20    and again, these are police officers.  And so these are

21    factual issues that a jury will have to decide that when a

22    police officer shows up to execute a search warrant, when a

23    police officer pulls you over, violence is present, but there

24    is also in a number of these instances, an element that

25    potentially a jury could find is consent, that the victim

Motions Hearing

 1    didn't put up enough of a fight and so that even though they

 2    may have run or they were -- they put up some degree of what

 3    would be normally understood as resisting, they ultimately

 4    consented.

 5         And then there are other instances where they may find

 6    that there was consent simply because of the presentation of

 7    official right.  The presentation of authority.  And those are

 8    all factual issues that will be really for the jury to decide

 9    and they'll get a unanimity instruction and we'll even submit

10    a special verdict so it's clear as to these Hobbs Act counts

11    what they have concluded.  But we think the facts of this case

12    warrant presenting those three versions that the Congress

13    drafted of the statute.

14              **THE COURT:**  Okay.

15              **MR. PURPURA:**  Your Honor, briefly again, I believe

16    again the Government is missing the point.  The indictment

17    here, Count 5 of the indictment on its face is invalid.  The

18    Court cannot retroactively give a jury verdict form which is

19    going to cure an indictment on its face which we have

20    absolutely no confidence in that the grand jurors could have

21    agreed to these mutually inconsistent offenses.  The elements

22    are completely inconsistent in the three.

23         The proper way this indictment should have been presented

24    to the grand jury in order to have any Fifth Amendment

25    validity in a grand jury proceeding would have been if the

1    Government believes they can show these three things, present

2    it, three separate counts to the grand jury.  One for robbery

3    through force or threat of force, one through extortion, force

4    or threat of force, and one as far as through official acts in

5    a public position.  They didn't do that.  They submitted and

6    again, in what I term to be a muddled indictment and we can

7    have absolutely no confidence.  So if you don't have a valid

8    indictment, then you just don't have it.

9            **THE COURT:**  How would having it in three separate

10   counts be better or more fair to the client?  I mean, wouldn't

11   I be looking at some sort of multiplicitas objection?

12           **MR. PURPURA:**  If we're going right back to what the

13   grand jury was presented with, that's what I'm suggesting,

14   that the grand jury is presented with a single count which has

15   three separate crimes.  The defendant has an absolute right to

16   know which crimes the grand jury had a conclusion of probable

17   cause on.  He does not know that from this indictment based on

18   the way the three separate crimes are charged in one single

19   count.  What I believe is that quite frankly, when this was

20   submitted to the grand jury before anyone pled or anything

21   else, the Government really didn't know what they had.  They

22   didn't know if it was a Hobbs Act robbery by force or threat

23   of force.  They didn't know if it was an extortion.  They

24   didn't know exactly what they had, so they just submitted the

25   whole thing to the grand jury.  You just can't have any

1    confidence.

2          THE COURT:   What case are you relying on for my

3    going back in to how the grand jury might have voted or what

4    they found probable cause on?

5          MR. PURPURA:   That you can only if it's valid on its

6    face and on the face of this indictment, this count, it cannot

7    be valid because you have three separate and distinct crimes

8    charged.   There are multiple statutes we have.   And if you

9    look at the sex statutes which charge multiple ways that a

10   particular statute can be violated and they're all separate

11   and distinct because they're separate crimes.   And all the

12   indictments in those they just don't charge a statute as take

13   your pick, it's broken down as to what it is.

14         THE COURT:   And which of the cases that you cite,

15   what do you think is close to supporting your argument on

16   this?

17         MR. PURPURA:   Quite frankly, I haven't really found

18   anything on this particular -- I have not seen this statute

19   cited in that way before.   The cases that I gave to the Court

20   for the Fourth Circuit, what is duplicitous.   So if this is

21   not duplicitous, I don't know what is.   Fourth Circuit says if

22   it's duplicitous on its face it's not a valid indictment.

23   It's not a valid count.

24        And I can, the one case I did cite -- and that's in

25   paragraph 3 and that is a *United States v. Burns 990 F.2d 1426*

1      *at 1438 Fourth Circuit.*  Duplicitous indictment charges more

2      than one offense in a single count.  So obviously we recognize

3      that counts can be duplicitous and clearly that any reading of

4      this count shows that it is duplicitous.

5              **THE COURT:**  Would you -- are you saying you would

6      agree on behalf of your client that if the indictment charged

7      three separate offenses occurring on July 8, 2016 against your

8      client, both Hobbs Act -- well all three, Hobbs Act robbery in

9      one count, extortion in the second count and extortion by

10     consent in the third count that would be okay?

11             **MR. PURPURA:**  I'm not sure.  I don't believe so.

12     Again, I go back to -- the Government who brings this case,

13     you bring the case, you're going to present a case to a grand

14     jury, you know what the defendant did when you bring that case

15     to the grand jury.  That's their responsibility.  It's not

16     just to throw a hodgepodge out there.  Can you image what the

17     instructions were in this case to the grand jury?  I can't

18     because we know under color of law they can't get a 924(c) and

19     they got it in the sixth count.  Did they tell them that was

20     also a crime of violence?  So that's -- that's my argument.

21             **THE COURT:**  Okay, thank you.  Anything else on this

22     motion?

23             **MR. WISE:**  No, Your Honor, thank you.

24             **THE COURT:**  I'm going to defer ruling on that for

25     now.

1          **MR. LEVIN:**  Your Honor, just to be clear we have

2     adopted that motion.

3          **THE COURT:**  Yes.

4          **MR. LEVIN:**  And that argument would be relevant to

5     Counts 3, 4, 5 and 6 for us.

6          **THE COURT:**  For your client, yes.  Okay.  I know

7     this is related, but not identical, the next one is number

8     203, motion to dismiss Count 6 for failure to state a claim.

9          **MR. PURPURA:**  Your Honor, I'll make that easy.

10     We'll submit on that.  We'll preserve it, we'll submit upon

11     that.

12          **THE COURT:**  Okay.

13          **MR. PURPURA:**  You did hear my argument how it does

14     tie back into Count 5, so that is an issue but aside from that

15     we'll just submit.  Count 6, correct.

16          **THE COURT:**  Right, my understanding on Count 6 is

17     part of what the Government is saying there, assuming for the

18     moment that Count 5 is not duplicitous, is not invalid on its

19     face, that what we really have is a post trial motion rather

20     than a pretrial motion.  I think Judge Ellis down in the

21     Eastern District went that way and that seemed to me to be

22     where I would be going as far as Count 6 and Count 4.

23          **MR. PURPURA:**  I'm not disagreeing with that.  Thank

24     you.

25          **THE COURT:**  Okay.  Does anybody else want to be

1       heard to the extent that the motion to dismiss Count 6 which

2       would also apply to I believe Count 4, the 924(c) claims?

3       Does anybody want to be heard differently on that?

4                  **MR. LEVIN:**  No, thank you.

5                  **MS. WICKS:**  No, I'd submit on that as well, Your

6       Honor.

7                  **THE COURT:**  Okay, all right.  Thank you then I think

8       we'll -- I'm deferring on the motion about Count 5 and 3 being

9       duplicitous, but Counts 4 and 6 will survive for post trial

10      motions if those counts in the indictment are not dismissed.

11          Motion for release of Brady materials.  Your number 224,

12      Mr. Purpura?

13                 **MR. PURPURA:**  Judge, you know, I'll tell you this is

14      the first time I filed a Brady motion since I've been

15      practicing in federal court over 30 years.  I think they're

16      extraordinary motions normally.  Normally we receive all the

17      information that we believe we're entitled to, especially in

18      this particular district, but in this case I don't think that

19      I have.  Because I don't believe the Government understands, I

20      don't believe the Government agrees with the legality of the

21      defense which I proposed from the beginning of this particular

22      case.

23          I can tell the Court as I mentioned earlier, I've given

24      the Government in numerous e-mails and discussions the theory

25      of the case as the way I see it, that Detective Hersl while on

1    the gun task force and prior to being on that particular gun

2    task force has been engaged in Baltimore City, ridding the

3    city with guns.  If you look at the records from 2013, 2014,

4    2015, 2016, there's been hundreds and hundreds of guns which

5    he's personally taken off the street.  And what we have here

6    from 2014 through 2016 is a handful, maybe five, maybe six

7    incidents out of all those hundreds and we consider those

8    incidents not to be good conduct, not to be -- they are

9    crimes, but the crimes would be a theft crime and not a

10   robbery and/or an extortion type of crime.

11       As the Court knows that the RICO predicate that some of

12   the predicates, there's many, but the ones charged here in

13   this particular case would be the fraud which is the overtime

14   fraud and either the Hobbs Act robbery extortion or the Hobbs

15   Act robbery would be predicates of theft, it's not a predicate

16   to the RICO in itself.  His conduct which he's admitted to is

17   of theft on these multiple occasions.  The robbery itself is

18   taking away the goods of another through force and/or threat

19   of force.  In all of these incidents and that's where the

20   Brady comes in in this particular request, we believe that the

21   evidence will show and the Government has evidence that the

22   incidents involving Detective Hersl were lawful, probable

23   cause arrests.

24       I'm not going to get to the point where you shouldn't go

25   into his subjective whether he intended or not to intend to,

1    but on the face, every single one -- and we normally don't.

2    You know, we don't go into the subject of intent of a police

3    officer.

4         **THE COURT:**  Not for Fourth Amendment issues.  This

5    is a little different.

6         **MR. PURPURA:**  But setting that aside, that's not the

7    thrust of the argument.  But the probable cause, there was

8    probable cause in all of these particular events, the five or

9    six that may involve Mr. Hersl, that once a probable cause

10   arrest is made as I believe the evidence will show, that the

11   guns were seized, that narcotics were seized and that money

12   was seized.  That once these items are seized, they are still

13   in the lawful custody of the police officer.  And then at that

14   point if the officer as in this particular case converts a

15   portion of that money to his own personal use as in one case

16   and perhaps $200 or $150, that is a theft.  There's no

17   question about it.  It's a theft that has been charged a theft

18   in multiple Baltimore City cases in the past history.  It's a

19   theft which should be tried in Baltimore City Circuit Court.

20   It's a theft to which Mr. Hersl readily admits his bad conduct

21   and what he's done in this these particular cases.  And it's

22   no different as the Government suggests -- there's no

23   attenuation because it's not temporal, that if Mr. Hersl then

24   turned the money into the evidence control and then took the

25   money from evidence control, it would still be a robbery under

1    the Government's theory.  That's not true, because it's not --

2    it's not.

3              **THE COURT:**  I don't think so, but --

4              **MR. PURPURA:**  It's not the temporal issue, but it's

5    no different then because once you have lawful custody, lawful

6    custody of the money, your duty is to turn it all in.  If you

7    don't turn it all in, that's a theft of those proceeds.  It's

8    a theft of money which now belongs to Baltimore City as much

9    as it still belongs to the person he seized it from.

10             **THE COURT:**  Suppose, going back to intent for a

11   moment, that there were proof that a jury could find it was

12   part of the plan from the beginning that your client was going

13   to go to a particular location with or without, but let's say

14   with a valid search or arrest warrant, but part of the normal

15   operating procedure was to take a portion of whatever was

16   there even though he had no right to it?

17             **MR. PURPURA:**  I hear the Court's argument.

18   Factually from what I've received in this case, that's not

19   going to occur.  I've reviewed both Gondo's testimony and

20   Shropshire trial and I've reviewed Mr. Rayam's testimony and I

21   didn't get that flavor whatsoever.  That's why I'm making this

22   Brady motion because I believe what they will testify to

23   unless -- I know the Government wouldn't couch them

24   differently, but I believe they would testify that they were

25   committing lawful probable cause arrests.  As a matter of

1    fact, Rayam when he testified in Shropshire and I have the

2    testimony here, he testified that once he stopped someone for

3    a good arrest, he probably gave him a break on the charging

4    document and charged him with a lesser charge if he took some

5    of their money.  So I don't see that scenario.

6         Now, if that scenario existed for the record alone, I'm

7    not going to agree with the Court because I believe the Red

8    Analysis may come in that you can't go behind the subjective

9    intent of a police officer if there's on its face, probable

10   cause.  But intellectually I understand what the Court is

11   saying to me.

12        But what I'm saying to the Court for purposes of Brady in

13   this case is it is a jury question.  We could have a Court

14   question too because as you know we can take a Court trial as

15   well, but that we are -- if it's Brady -- if it's there and

16   that's our theory, then give it to us, that's all.  If they

17   said that, give it to us.  So we know in the clear and I'll

18   just do this and I'll sit down -- that we know that there were

19   robberies.  And some of these gentlemen did commit real

20   robberies where you know that in Shropshire in the testimony

21   on page 147, this is when Rayam -- at first what Rayam

22   intended to do -- this is with Gondo, they intended to go into

23   the Anderson house to commit a burglary if you recall, because

24   they didn't think anyone was home.  That's a burglary, not

25   even a robbery.  So they went into the house and lo and

1    behold, what Rayam says, I pulled out my gun to startle her

2    and I was trying to scare her.  And I know I gave her some

3    orders like, just don't move.  And I could have even said,

4    I'll kill ya and where is the money.

5        Now on its face we know that's a robbery.  When they

6    pled, he can plead to it, that's a robbery, a distinct robbery

7    which they did and this is when they were not acting as police

8    officers.

9        What I'm suggesting in my Brady motion that the

10   Government has and I've tried -- I apologize.

11           **THE COURT:**  No, go ahead.

12           **MR. PURPURA:**  I've talked to -- some of the police

13   officers I've been able to talk to.  They really don't want to

14   talk to me because they're afraid who knows what's been

15   happening.  They can still be charged even if they believe

16   they didn't do things.  I was able to at least in one

17   conversation with Detective Clewl.  Detective Clewl was on the

18   -- I can say names now, can't I?  The H case.  What's their

19   initials?  July 8, 2015 Westminster incident, the one

20   involving bringing the people back to Carroll County where the

21   search occurred.

22           **THE COURT:**  Um-hum.

23           **MR. PURPURA:**  Detective Clewl from what I've learned

24   from him would be that he thought it was a legitimate police

25   operation.  He thought the affidavit was valid.  He's the one

1    that called in just off of vacation, Detective Hersl who came

2    from vacation the day before, knew nothing about the

3    investigation, called him in at that time to conduct

4    surveillance and then the arrest of the Hamiltons and then it

5    goes on.

6        So that's information I was able to glean.  The

7    Government had that information well before I was able to

8    eventually talk to this particular detective.

9        So what I'm asking the Court is that you know what my

10   theory of defense is.  I think it's a viable theory of defense

11   here.  It's going to be a jury question in this particular

12   case.  Even at best if they intended in advance, whether there

13   is intent or not intent, whether it's a legitimate probable

14   cause.  It is not going on the street and taking money from a

15   citizen who is doing nothing at all wrong.  Detective Hersl is

16   not walking up to John Blow who is doing nothing at all wrong.

17   On all these incidents, it's a person who's out there, dealing

18   drugs, with a gun who is being arrested.

19       And subsequent to that, out of the hundreds there's a few

20   bad ones which involve the theft of those proceeds before they

21   made it to inventory.

22           **THE COURT:**  So, the information that you're looking

23   for would be Brady, if I agree that you have a valid theory of

24   defense.

25           **MR. PURPURA:**  That's right.  And something that's

1    going to go to the jury.  If I generate a jury question,

2    that's a valid theory --

3              THE COURT:  But what is the jury question exactly?

4              MR. PURPURA:  At worst case it would be, did the

5    officers act originally with the intent to arrest the person

6    to steal from him or did the officers have probable cause and

7    their intent was to arrest the person and subsequent to that,

8    subsequent to the arrest, the money was taken.  That's the

9    jury question.

10             THE COURT:  Okay.

11             MR. PURPURA:  Yes, that -- did I articulate it?

12             THE COURT:  You did.  I'm not sure that I agree with

13   you, but I believe I understand your theory.

14             MR. PURPURA:  All right, well --

15             THE COURT:  It's -- we have a course of events.

16   Whether or not they go in with an initially valid warrant, if

17   they go in and use that valid warrant in a way to induce,

18   wrongfully induce consent of people to turn over property

19   which is not actually going to be given to the Baltimore

20   Police evidence department, it's going to be taken for their

21   own purposes.  I'm not sure why that is not extortion.

22             MR. PURPURA:  I like the sound of extortion more

23   than robbery.

24             THE COURT:  Okay, well it's called extortion.

25             MR. PURPURA:  Right, but let me --

1          **THE COURT:**  By wrongful use or threat of force,

2    violence or fear.

3          **MR. PURPURA:**  But here's why it's not.  And what you

4    have to -- and why I believe I can generate -- why it

5    generates a question for the trier of fact, as I articulated

6    when I first started, there are hundreds of arrests involving

7    Detective Hersl.  Of those hundreds, there's just a handful.

8    So if you tried to show intent that he's predisposed to do

9    this, you would show a lot more than the very few I believe in

10   this limited, over these three years that the Government is

11   going to present it.

12         So if there is, again, a probable cause -- a basis for

13   the arrest, and here's the jury determination.  Do you believe

14   that Detective Hersl was arresting SS or HT because he

15   intended to take money from him or do you believe that

16   Detective Hersl was arresting SS and/or HT because he had

17   probable cause and was acting under authority and color of law

18   at that time?  And if so, when he takes the property, takes

19   the property for purpose of bringing that property -- now he's

20   not using force at that time because he has lawful authority

21   to take that property -- every arrest of a police officer

22   meets the definition of a robbery.  But we give police

23   officers the authority to use their force to stop a person and

24   take the wrongful proceeds from that person.  And so it really

25   comes down to the criminal mens rea of the defendant and

```
1        that's why it's a generated jury question.

2            If these are fabricated probable cause which we have,

3        it's been in the paper, there's a lot of things like that,

4        then you don't -- you don't have that.  You don't have it.  We

5        can go that step.  But here if I generate and the evidence

6        generates this, I'm entitled to it, that's why I'm entitled

7        for a practical matter to the Brady information which I'm

8        requesting.

9                 THE COURT:  Okay, thank you.

10                MR. PURPURA:  Let me see if there's anything else

11       that I wanted.  That's it, thank you.

12                THE COURT:  Anything else either defense counsel

13       want to say on that point?

14                MR. LEVIN:  No, thank you.

15                MS. WICKS:  No, thank you, Your Honor.

16                THE COURT:  Mr. Wise?

17                MR. WISE:  Thank you, Your Honor.  So Mr. Purpura

18       said that any time a police officer seized property, that that

19       could be charged as a robbery which of course is not the case

20       because the --

21                THE COURT:  Well, that's not really what he said.  I

22       mean --

23                MR. WISE:  Well, I'm trying to understand this

24       probable cause defense.

25                THE COURT:  The theory as I understand it is that
```

1       he's saying essentially that you charged the wrong crime.

2       That if the officer had probable cause to make the arrest and

3       take the property and did so and it all would have been lawful

4       had he only taken it down to the Baltimore Police Headquarters

5       and put it in evidence control and done what he was supposed

6       to, that then he would not have committed a crime.  And what

7       he I believe is saying is that if the officer goes in there

8       with probable cause, has the right to take the property from

9       the person to begin with, the fact that he later steals some

10      of it, doesn't turn it over to evidence control, does not

11      amount to robbery or extortion.

12              **MR. WISE:**  And I think that's really the difference.

13      There is no "later" in these cases.  The property -- the

14      intent for the Maryland robbery statute is the intent at the

15      time of the taking.  And so in the case of HT which is

16      racketeering act 4 on November 27, 2015, then Detective Hersl

17      detained this man, took $530 from him, put part of it in his

18      pocket and then turned $216, put the other $216 into an

19      evidence envelope and sent it downtown.

20          So the intent at the time of the taking is what makes

21      this a robbery.  He didn't -- and this is the case I think

22      they want to defend, but they don't have.  He didn't send $530

23      down to the evidence control unit and then sneak in later that

24      night and cut open the bag and take out everything but the

25      $216.

1          And it's the same fact pattern for racketeering act 5

2     which was the very next day when he stopped AS, took $500 from

3     him and only submitted $218.  And it's the same -- there is

4     the same temporal issue in all five of the specific robbery

5     episodes that are alleged against Mr. Hersl.  The money at the

6     time of the taking is put in Mr. Hersl's pocket, his vest, a

7     bag.  It is never submitted.

8          So is there probable cause to make an arrest to seize

9     some portion?  There may be, although there will be testimony

10    by a number of these victims that they were not engaged in the

11    conduct that Detective Hersl asserted they were in the

12    statements of probable cause and he's even admitted in at

13    least one of those instances that the statement of probable

14    cause is a fabrication.  But probable cause doesn't give him

15    authority to put money in his pocket.  It gives him authority

16    to submit money to the evidence control unit to seize it on

17    behalf of the police power vested in the State.  And that's

18    really why every seizure cannot be charged as a robbery.  That

19    was the inartful point I was trying to make.  Because at the

20    time of the taking, the intent is to submit it.  And in this

21    case, on each occasion, he submitted some of it and he kept

22    some of it.  So even if there is valid probable cause, it's no

23    defense to the portion that he took for himself at the same

24    time.

25               **THE COURT:**  And just asking the follow-up on

1    something you said that you mentioned a statement of probable

2    cause.  For these particular acts, number 4 and number 5,

3    whatever they are, if there is a statement of probable cause

4    warrant, whatever, that goes along with that event, has that

5    been turned over?

6              **MR. WISE:**  Anything we have like that we've turned

7    over.  If there's an incident report usually in each episode

8    although not always -- they weren't great about their

9    paperwork believe it or not -- the statement of probable

10   cause.  Warrants have been incredibly difficult to track down.

11   The city courts are not easy places to navigate to find

12   warrants.  Where we have warrants we've turned them over.

13   Candidly there's a lot of problems with these warrants that

14   all of the co-defendants will testify about.  So even the

15   question of whether there is probable cause -- and I'm very

16   reluctant to concede that that's something a trial jury should

17   even be deciding.  I mean, these are incredibly difficult.

18   Whether probable cause exists is something we reserve to trial

19   judges in pretrial settings precisely because these are

20   nuanced and difficult questions of law.

21        And so we're not conceding that that's even an

22   appropriate defense.  He can certainly argue about what his

23   state of mind was, but the idea that there was a complete

24   defense to a robbery charge if there is probable cause we

25   think is legally inaccurate.  Because intent to rob can

1    certainly coexist with intent to seize some percentage of

2    those funds for the state, for the sovereign pursuant to what

3    he believes is his authority to do it because of probable

4    cause or what he thinks he saw or what an informant told him,

5    but, you know, none of that acts as a complete defense to

6    these charges.  None of them magically turns them into thefts.

7    And I'm sort of astonished to hear that the defense is going

8    to say that these are thefts, but not robberies.  As Your

9    Honor pointed out they are then -- I don't know how that's a

10   defense to their extortions, either violent extortions or

11   extortions under color of official right at the very least,

12   but I guess we'll have to wait and see.

13            **THE COURT:**  Yup.

14            **MR. PURPURA:**  Last word, if I may?

15            **THE COURT:**  Sure.

16            **MR. PURPURA:**  Thanks.  The issue of probable cause

17   in any civil case involving a police officer is decided by the

18   jury itself.  Whether the police officer was acting with the

19   proper authority and probable cause is a jury question.  And

20   the jury is instructed on that and they make that

21   determination.  In this particular case, and --

22            **THE COURT:**  I don't necessarily agree with you, but

23   that's fine.

24            **MR. PURPURA:**  In this particular case I think we are

25   both equally astounded at each other.  What I see here is a

1   generated -- if the facts come out the way I'm suggesting, a

2   generated jury question.  The Government is arguing it's

3   either some sort of robbery, some sort of extortion, extortion

4   A or extortion B.  The way I believe the facts will show in

5   this particular case is that Detective Hersl was acting

6   appropriately when he committed a really -- when he arrested

7   someone, that he had probable cause to make that arrest, that

8   he has the authority at that point -- and this is a question

9   of intent -- he has the authority at that point to seize the

10  drugs, the guns and the money.  And then after when he has

11  lawful at that point still because they're all connected

12  together and that's what happens, and then they go down to the

13  inventory.  If he decides at that point that I'm only going to

14  turn in 50 of the 300, then that is a theft, a conversion of

15  what should be at that point seized money, lawfully seized.

16  And that I believe is the question the jury must make in this

17  particular case.

18          THE COURT:  Okay, thank you.  I am going to defer on

19  that one, the Brady along with the duplicitous one.

20      There is your next one, number 225, the motion in limine

21  to preclude the Government and its witnesses to referring to

22  alleged acts as robberies.  And by that you mean they can't

23  say that they thought they were committing a robbery?

24          MR. PURPURA:  Yeah.  Let's take a look at it for a

25  second.  And in my motion I think it was Mr. Wise that had,

 1     you know, I think it was Rayam on the witness stand and used

 2     the word "robbery" "robbery" "robbery" "robbery" 15 times when

 3     going through the acts.  Some of the acts as I pointed out and

 4     showed on the overhead are clear robberies that these

 5     gentlemen committed.  And some as I'm suggesting would be

 6     conversions/thefts of monies that were properly seized at that

 7     point and not robberies.  And here's the simple point.  The

 8     607 allows either party to impeach credibility.  The only

 9     reason that the Government would put Gondo and Rayam up there

10     and ask them about their prior bad acts under 608 and/or 609

11     normally is to kind of blunt the sting of cross-examination

12     because then we get into it, didn't you do this -- well that's

13     not the case here in this particular case.  That's not what

14     cross is all about in this particular case.  But what they're

15     able to do -- so it has a limited purpose normally.  And so

16     what they're able to do by classifying everything as a

17     robbery, robbery, robbery is to take away from the province of

18     the jury, the legal conclusion.  Because in this particular

19     case whether there is a robbery or not a robbery as in the

20     theft, that's a conclusion that the jury is going to draw.

21          If you look at the plea agreements of all the defendants

22     that have pled so far, the elements are spelled out and the

23     elements that are spelled out are for the RICO statute, not

24     for the robbery portion, just RICO itself, what it takes to

25     commit a RICO, not the force and threat of force.  The only

1    reference to robbery is in the calculation of the guidelines.

2          And there's a lot of reasons why people will agree to a

3    plea agreement other than the fact that they agree that their

4    acts constitute a robbery.  And that would be lo and behold

5    what happened here.  If you don't plead now, the Government is

6    going to file a 924(c).  One 924(c) against you or two 924(c)s

7    against you.  So your delay if you would have pled to

8    robberies even though intelligently you can't come to grips or

9    legally you can't come to grips with the fact that it's a

10   robbery, you're now stuck with one or now two 924(c)s.

11         So I'm just not asking the Government to -- they can talk

12   about the acts.  I did this, I did that, but the conclusion

13   that their particular act was a robbery in this particular

14   case under this fact situation is a legal conclusion for the

15   jury to draw and not for the defendants to draw.  We

16   inarticulately use "robbery" often on the street.  If there's

17   a burglary in the house, we call it a robbery.  If there's a

18   housebreaking, we call it a robbery.  If somebody takes

19   something from you we call it a robbery.  And everything has a

20   different category or different things or different elements.

21   If they didn't, we wouldn't be here.  We wouldn't be going to

22   trial because we haven't denied what we've done.  Thank you.

23              **THE COURT:**  Okay, anybody want to add anything?

24              **MR. LEVIN:**  No thank you, Your Honor.

25              **THE COURT:**  Government?

1             **MR. WISE:**  Your Honor, Mr. Purpura says what we

2      characterize as robberies.  Five criminal defendants have

3      stood up in front of Your Honor, one sergeant, four former

4      detectives and admitted they committed robberies.  They have

5      had competent counsel.  They have lengthy statements of facts

6      where they make admissions concerning their conduct.  It's not

7      simply as Mr. Purpura says in the calculation of guidelines.

8      They admit they use force.  They admit they restrained people.

9      What they -- when they talk about -- when Detective Rayam,

10     former Detective Rayam testified, he used the word "robberies"

11     because that's what in his mind he did.  It's not us

12     characterizing it.

13          And so the ultimate issue for the jury is, is that what

14     Mr. Hersl did?  The question of what Mr. Rayam and Mr. Gondo

15     and Mr. Hendrix and Mr. Taylor -- and Mr. Ward did are

16     settled.  And so the idea that they can't -- we have to

17     construct some, you know, magic words for them to describe

18     what they did, I think is frankly sort of preposterous.  And

19     the Court routinely presides over trials where co-defendants

20     will testify and they will describe what they did.  They're

21     charged with possession with intent to distribute or

22     conspiracy to distribute and they tell the jury, that's what I

23     did and here's how I did it and they use the language in the

24     statute.  And then again the question is, is the defendant on

25     trial guilty of that offense?  And the Court instructs the

```
 1    jury that they have to make individualized findings of guilt
 2    and we proceed.
 3         I've never seen a trial where we couldn't use the words
 4    that the defendants -- that the co-defendants would use to
 5    describe their conduct that they were charged with or that
 6    they pled to and I think it would be extraordinarily
 7    unnecessary.
 8              THE COURT:  Okay.
 9              MS. WICKS:  Your Honor, just to correct the record I
10    think Mr. Wise -- I've said the wrong name before apparently
11    and he just said Taylor when --
12              MR. WISE:  I said Ward.  I said Ward.  I corrected
13    myself.
14              THE COURT:  He did, yeah.  Thank you, to be clear.
15              MR. PURPURA:  Last word, Judge.  I don't have to
16    tell you, you know that the threat of a 924(c), we know what
17    that does.  We know how that can induce pleas.  Look, I'm not
18    going to go to school and tell you what the other lawyers have
19    told me people have come in here and bit their tongue when
20    they talked about robberies when they know factually what they
21    really are, but they were not therefore charged with a 924(c)
22    and two 924(c)s gives you at least 30 years and then the
23    robberies on top of that.  So everyone knows what it is.
24         But be that as it may, in this particular case, it's
25    different than just about any other case that we've tried
```

1    because the essence of this case is whether the actions of

2    Detective Hersl which may have coincided with Rayam and Gondo

3    are a robbery, a robbery as for the jury to make that

4    determination, not for them.  And we're not asking not to use

5    those acts.  You can use those acts, just say did you do such

6    and such, you take money?  Is money missing?  Tell us your

7    participation.  That's it.

8              **THE COURT:**  Okay.  All right, well I'm not going to

9    impose a blanket prohibition on referring to these things as

10   robberies.  Some of them probably were.  And in any event,

11   there are defendants who believe that that's what they pled

12   guilty to.

13        On the other hand, I certainly think that I can ask the

14   Government to be restrained and careful about that and not use

15   that word unnecessarily and I will approach it in the way that

16   we customarily do when there's a person that is a co-defendant

17   that has been charged in the conspiracy and is admitting to

18   guilt of the same thing that other people are charged with is

19   to provide a limiting instruction and make it clear that

20   whatever somebody else pled to is not dispositive for the

21   people that are on trial and the jury has to make an

22   individual determination as to them.

23        So I'm denying, but with a caution.  The motion in limine

24   to preclude the reference to these prior acts as robberies.

25             I think that is it except for the most recently

1    filed motion relating to the trial date which I would like to

2    discuss with counsel in chambers.  Is there any other open

3    motion?

4              **MR. WISE:**  There isn't a motion, Your Honor, I just

5    wanted to briefly put on the record:  I had a conversation

6    with defense counsel on two issues that I think we've

7    resolved, I just --

8              **THE COURT:**  Okay.

9              **MR. WISE:**  -- I just thought would be important to

10   make sure.  I think we will likely file a motion in limine

11   asking the Court to take judicial notice of the fact that the

12   Baltimore Police Department is a legal entity and from other

13   cases where legal entities have been charged, that's the

14   mechanism that is the preferred route.  So I've mentioned that

15   to defense counsel.  I would just mention that that's -- I

16   don't know that everyone consented, but no one told me we'll

17   object, you have to call some witness to say the Baltimore

18   Police Department is a legal entity, so we anticipate doing

19   that.

20        On a related issue, the overtime -- the evidence of

21   overtime fraud in this case will be for several different

22   kinds.  There will be things like travel records that show

23   people being out of the state or even out of the country at

24   certain times when they were claiming overtime.  There will be

25   testimony obviously from co-defendants.  There will also be

1    though information through a law enforcement witness, most

2    likely Special Agent Jensen, where she compared the overtime

3    records to the location of the defendants based on their cell

4    phone.  And it's our view that that's not -- that what she did

5    is not expert analysis.  It didn't involve any special tools

6    like in a bank robbery where precise location is critical.  It

7    was simply comparing the location of the defendant's phone,

8    let's say on a morning it's sitting at a tower near their

9    house in Middle River and meanwhile the overtime slip says

10   they've been working downtown since 8:30 or something.  We

11   raised that issue with defense to say we don't think this is

12   expert testimony.  We frankly could get an expert and have

13   someone qualified that way, but we think it's actually -- that

14   that comparison exercise is something a law enforcement

15   officer would do.

16       We could file a motion in limine to that end, but I think

17   from what I've heard from defense counsel, we're in agreement

18   that we need not tender an expert for that kind of testimony.

19   And I just wanted to put that, sort of put that out there.

20   And I think that's it from us at this time.

21            **MR. PURPURA:**  Your Honor, just --

22            **THE COURT:**  Sure.

23            **MR. PURPURA:**  I may not object to that, but I'm

24   letting the Government know that I may argue that in close or

25   another time even in cross-examining whoever they put on the

1    stand that they're not an expert and they really don't know

2    these things and maybe should know these things and may go

3    into a panoply of issues involving cell towers.

4              **MR. WISE:**  I mean, sure.  What we can do then is we

5    can notice an expert and we can either call that person in

6    rebuttal if that's the kind of -- if that's the kind of cross

7    that is -- that's conducted with the agent who compared the

8    location of the cell phone to the overtime records that were

9    submitted.

10             **THE COURT:**  Okay.  I see Mr. Purpura nodding, that

11   would be fine.

12             **MR. WISE:**  Okay, we'll do that.  Thank you.

13             **MS. WICKS:**  Your Honor, I just -- I don't think the

14   Court had made a decision and I'm just otherwise submitting on

15   the record as to 211 and 212.

16             **THE COURT:**  I'm sorry, I'm sorry, yes.

17             **MS. WICKS:**  I think we just skipped -- I mean, not

18   that there's a problem, but we skipped some things.

19             **THE COURT:**  We did skip a few things.  You're

20   submitting?

21             **MS. WICKS:**  I'm submitting on 211 and 212.

22             **THE COURT:**  211 which I'm denying and 212 being

23   excluding hearsay from alleged co-conspirators which I'm also

24   denying.  Of course, subject to what the jury will be

25   instructed, there are certain things that the Government will

1      have to show that statements were made in the course of the

2      conspiracy and furtherance of the conspiracy and so forth, but

3      I'm not excluding it in advance.  That's 211 and 212.

4              **MS. WICKS:**  Then 209 I'm also submitting.  I think

5      -- I'll have further discussions with the Government, but the

6      transcripts that I've gotten so far, there's definitely -- I

7      think it depends on -- clearly there's a huge volume of

8      transcripts and information, so if they let me know, if we get

9      to that point what ones, there definitely will be transcripts

10     that I believe the defense takes issue with.

11             **THE COURT:**  All right, you'll continue to discuss

12     that.  I'm not going to rule on that one then.  That's number

13     209.  Okay, anything else?

14             **MR. PURPURA:**  Thank you, Your Honor.

15             **THE COURT:**  Okay, thank you all.  See you upstairs

16     in chambers in a few minutes.

17             **THE CLERK:**  All rise.  This Honorable Court is now

18     adjourned.

19             **(Proceeding concluded.)**

20

21

22

23

24

25

```
 1              CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5         I, Nadine M. Gazic, Registered Merit Reporter, in

 6    and for the United States District Court for the District of

 7    Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that

 8    the foregoing is a true and correct transcript of the

 9    stenographically-reported proceedings held in the

10    above-entitled matter and that the transcript page format is

11    in conformance with the regulations of the Judicial Conference

12    of the United States.

13

14                         Dated this 4th day of January, 2018.

15

16                         Nadine M. Gazic, RMR, CRR

17                         NADINE M. GAZIC  RMR, CRR

18                         FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25
```

## $

**$150** [1] - 40:16
**$20,000** [1] - 27:14
**$200** [1] - 40:16
**$216** [3] - 48:18, 48:25
**$218** [1] - 49:3
**$500** [1] - 49:2
**$530** [2] - 48:17, 48:22

## 1

**1** [11] - 5:13, 6:23, 6:25, 12:20, 17:9, 18:3, 19:5, 19:7, 19:12, 25:23
**10** [1] - 2:6
**101** [1] - 1:24
**1426** [1] - 35:25
**1438** [1] - 36:1
**147** [1] - 42:21
**15** [1] - 53:2
**16** [1] - 22:23
**18** [1] - 5:3
**19** [3] - 1:8, 28:3, 28:4
**1951** [11] - 25:12, 25:15, 25:18, 25:25, 26:2, 27:13, 27:22, 27:24, 28:6, 28:8, 28:20
**1A** [1] - 1:9
**1st** [7] - 10:12, 11:9, 15:25, 16:5, 16:7, 16:8, 16:15

## 2

**2** [8] - 9:15, 9:16, 9:18, 17:10, 19:5, 19:8, 19:12, 26:24
**2013** [1] - 39:3
**2014** [3] - 22:16, 39:3, 39:6
**2015** [3] - 22:16, 39:4, 43:19, 48:16
**2016** [4] - 22:16, 36:7, 39:4, 39:6
**2017** [3] - 1:8, 5:13, 18:3
**2018** [1] - 62:14
**202** [1] - 24:25
**203** [2] - 24:19, 37:8
**205** [1] - 19:1
**207** [1] - 20:3
**208** [2] - 18:19, 24:25
**209** [2] - 61:4, 61:13
**211** [4] - 60:15, 60:21, 60:22, 61:3
**212** [4] - 60:15, 60:21, 60:22, 61:3

**21201** [1] - 1:25
**224** [1] - 38:11
**225** [1] - 52:20
**226** [1] - 20:2
**27** [1] - 48:16
**28** [1] - 62:7
**2:38** [1] - 3:2

## 3

**3** [7] - 19:5, 19:8, 19:10, 19:15, 35:25, 37:5, 38:8
**30** [2] - 38:15, 56:22
**300** [1] - 52:14
**302s** [1] - 22:2

## 4

**4** [10] - 2:5, 19:5, 19:8, 19:10, 19:15, 37:5, 37:22, 38:2, 38:9, 48:16, 50:2
**404(b** [12] - 19:20, 19:22, 20:1, 20:4, 20:9, 20:16, 20:21, 20:24, 21:6, 21:11, 22:6, 23:18
**404(b)** [1] - 24:8
**410-962-4753** [1] - 1:25
**46** [1] - 8:3
**4th** [2] - 1:24, 62:14

## 5

**5** [12] - 24:18, 27:11, 27:12, 27:13, 29:16, 33:17, 37:5, 37:14, 37:18, 38:8, 49:1, 50:2
**50** [1] - 52:14

## 6

**6** [13] - 4:8, 8:2, 14:17, 14:19, 29:22, 30:6, 37:5, 37:8, 37:15, 37:16, 37:22, 38:1, 38:9
**607** [1] - 53:8
**608** [1] - 53:10
**609** [1] - 53:10

## 7

**753** [1] - 62:7

## 8

**8** [2] - 36:7, 43:19
**8:30** [1] - 59:10

## 9

**924(c** [5] - 36:18, 38:2, 54:6, 56:16, 56:21
**924(c)** [1] - 54:6
**924(c)s** [3] - 54:6, 54:10, 56:22
**990** [1] - 35:25
**9:40** [1] - 7:9

## A

**able** [6] - 43:13, 43:16, 44:6, 44:7, 53:15, 53:16
**above-entitled** [1] - 62:10
**absolute** [1] - 34:15
**absolutely** [4] - 18:2, 28:16, 33:20, 34:7
**abundant** [1] - 23:3
**abundantly** [2] - 22:13, 29:6
**accurate** [1] - 7:10
**achieve** [1] - 26:11
**acknowledge** [1] - 9:10
**acknowledged** [1] - 18:5
**act** [5] - 28:22, 45:5, 48:16, 49:1, 54:13
**Act** [17] - 26:2, 26:23, 28:6, 29:10, 29:11, 29:25, 31:23, 31:25, 32:4, 32:12, 32:18, 33:10, 34:22, 36:8, 39:14, 39:15
**acting** [4] - 43:7, 46:17, 51:18, 52:5
**actions** [1] - 57:1
**acts** [21] - 19:18, 21:3, 21:4, 21:11, 21:15, 23:22, 23:24, 23:25, 24:1, 34:4, 50:2, 51:5, 52:22, 53:3, 53:10, 54:4, 54:12, 57:5, 57:24
**actual** [4] - 26:8, 27:4, 27:15, 27:20
**add** [1] - 54:23
**additional** [4] - 20:8, 20:16, 22:3, 30:16
**additionally** [1] - 18:17
**address** [1] - 25:17

**addressed** [1] - 22:11
**adjourned** [1] - 61:18
**admissible** [1] - 19:22
**admissions** [1] - 55:6
**admit** [2] - 55:8
**admits** [1] - 40:20
**admitted** [3] - 39:16, 49:12, 55:4
**admitting** [1] - 57:17
**adopt** [2] - 24:25, 25:1
**adopted** [1] - 37:2
**adopting** [1] - 19:14
**advance** [5] - 18:1, 22:1, 24:13, 44:12, 61:3
**advice** [3] - 8:18, 9:19, 17:10
**advised** [2] - 10:23, 18:4
**Affairs** [6] - 5:22, 6:15, 10:24, 11:8, 11:18, 14:7
**affidavit** [1] - 43:25
**afford** [1] - 8:20
**afraid** [1] - 43:14
**afternoon** [6] - 3:8, 3:11, 3:19, 3:22, 10:10, 10:11
**agency** [1] - 8:14
**Agent** [4] - 4:10, 5:11, 10:10, 59:2
**agent** [4] - 4:25, 15:3, 60:7
**agents** [1] - 5:16
**agree** [9] - 14:18, 22:7, 36:6, 42:7, 44:23, 45:12, 51:22, 54:2, 54:3
**agreed** [4] - 20:11, 21:25, 33:21
**agreement** [4] - 20:25, 24:8, 54:3, 59:17
**agreements** [1] - 53:21
**agrees** [2] - 12:23, 38:20
**ahead** [3] - 4:5, 4:7, 43:11
**allege** [1] - 31:21
**alleged** [4] - 23:22, 49:5, 52:22, 60:23
**allows** [1] - 53:8
**almost** [3] - 21:24, 29:23
**alone** [1] - 42:6
**alternative** [1] - 31:23
**Amendment** [10] - 28:12, 28:14, 28:22, 28:24, 28:25, 30:23, 31:2, 33:24, 40:4

**America** [1] - 3:5
**AMERICA** [1] - 1:3
**amount** [1] - 48:11
**Analysis** [1] - 42:8
**analysis** [1] - 59:5
**Anderson** [1] - 42:23
**answer** [2] - 8:23, 9:3
**answering** [1] - 8:24
**anticipate** [1] - 58:18
**anticipating** [1] - 19:21
**apologize** [1] - 43:10
**applicable** [1] - 25:2
**applied** [2] - 32:18, 32:19
**applies** [1] - 30:15
**apply** [1] - 38:2
**appointed** [1] - 8:21
**appreciate** [1] - 17:25
**approach** [1] - 57:15
**appropriate** [2] - 32:11, 50:22
**appropriately** [1] - 52:6
**archive** [1] - 27:13
**argue** [3] - 20:20, 50:22, 59:24
**arguing** [1] - 52:2
**argument** [12] - 19:9, 19:15, 29:9, 30:16, 30:23, 31:2, 35:15, 36:20, 37:4, 37:13, 40:7, 41:17
**arises** [1] - 24:14
**arrangement** [1] - 22:1
**arrest** [14] - 5:20, 15:15, 40:10, 41:14, 42:3, 44:4, 45:5, 45:7, 45:8, 46:13, 46:21, 48:2, 49:8, 52:7
**arrested** [5] - 11:19, 16:16, 16:25, 44:18, 52:6
**arresting** [2] - 46:14, 46:16
**arrests** [3] - 39:23, 41:25, 46:6
**arrived** [1] - 14:4
**arriving** [1] - 10:23
**articulate** [1] - 45:11
**articulated** [2] - 30:18, 46:5
**AS** [1] - 49:2
**aside** [2] - 37:14, 40:6
**asserted** [1] - 49:11
**assist** [1] - 5:11
**Assistant** [2] - 1:13, 3:6

**assume** [1] - 15:1
**assuming** [1] - 37:17
**asthma** [1] - 18:7
**asthmatic** [1] - 14:3
**astonished** [1] - 51:7
**astounded** [1] - 51:25
**attack** [1] - 25:13
**attacking** [1] - 26:12
**attention** [1] - 14:6
**attenuation** [1] - 40:23
**Attorney** [1] - 3:6
**Attorneys** [1] - 1:13
**audio** [2] - 7:5, 7:7
**authority** [11] - 31:5, 33:7, 46:17, 46:20, 46:23, 49:15, 51:3, 51:19, 52:8, 52:9
**availability** [1] - 5:24
**available** [1] - 6:14
**aware** [6] - 11:3, 11:6, 11:11, 15:23, 16:16, 16:24

## B

**bad** [3] - 40:20, 44:20, 53:10
**bag** [2] - 48:24, 49:7
**Baltimore** [20] - 1:9, 1:25, 5:5, 5:12, 5:23, 10:16, 11:22, 12:1, 14:24, 16:4, 16:13, 39:2, 40:18, 40:19, 41:8, 45:19, 48:4, 58:12, 58:17
**bank** [1] - 59:6
**Bar** [1] - 3:13
**based** [5] - 14:15, 19:6, 28:9, 34:17, 59:3
**basic** [1] - 21:17
**basis** [3] - 9:20, 28:16, 46:12
**beautifully** [1] - 30:18
**become** [1] - 6:14
**BEFORE** [1] - 1:10
**began** [1] - 5:19
**begin** [3] - 4:6, 24:5, 48:9
**beginning** [2] - 38:21, 41:12
**behalf** [10] - 3:20, 3:23, 4:4, 18:16, 19:15, 20:1, 24:17, 25:1, 36:6, 49:17
**behind** [2] - 31:3, 42:8
**behold** [3] - 28:5, 43:1, 54:4
**believes** [2] - 34:1, 51:3

**belongs** [2] - 41:8, 41:9
**below** [1] - 9:9
**benefit** [1] - 23:20
**Bennett** [1] - 26:25
**best** [1] - 44:12
**better** [1] - 34:10
**between** [2] - 32:12, 32:14
**bill** [2] - 18:24, 19:4
**bit** [1] - 56:19
**BLAKE** [1] - 1:10
**Blake** [2] - 3:11, 23:16
**blanket** [1] - 57:9
**Blow** [1] - 44:16
**blunt** [1] - 53:11
**bold** [1] - 8:6
**Box** [1] - 23:17
**Brady** [6] - 38:11, 38:14, 39:20, 41:22, 42:12, 42:15, 43:9, 44:23, 47:7, 52:19
**break** [1] - 42:3
**breathing** [1] - 18:7
**briefly** [2] - 33:15, 58:5
**bring** [2] - 36:13, 36:14
**bringing** [2] - 43:20, 46:19
**brings** [1] - 36:12
**broken** [1] - 35:13
**brought** [3] - 11:17, 17:25, 32:2
**building** [5] - 6:19, 12:2, 12:6, 15:5, 15:25
**Bureau** [2] - 4:25, 5:22
**burglary** [3] - 42:23, 42:24, 54:17
**burns** [1] - 35:25
**BY** [3] - 5:10, 10:9, 13:8

## C

**calculation** [2] - 54:1, 55:7
**candidly** [1] - 50:13
**cannot** [4] - 8:20, 33:18, 35:6, 49:18
**car** [1] - 15:9
**careful** [1] - 57:14
**Carroll** [1] - 43:20
**case** [61] - 3:3, 3:4, 7:1, 12:4, 12:24, 21:1, 21:15, 21:23, 22:19, 25:20, 25:21, 25:24, 26:9, 26:13, 26:20, 26:24, 27:9,

28:13, 28:25, 29:8, 30:9, 33:11, 35:2, 35:24, 36:12, 36:13, 36:14, 36:17, 38:18, 38:22, 38:25, 39:13, 40:14, 40:15, 41:18, 42:13, 43:18, 44:12, 45:4, 47:19, 48:15, 48:21, 49:21, 51:17, 51:21, 51:24, 52:5, 52:17, 53:13, 53:14, 53:19, 54:14, 56:24, 56:25, 57:1, 58:21
**CASE** [1] - 1:4
**cases** [11] - 5:4, 5:5, 25:13, 29:7, 31:19, 35:14, 35:19, 40:18, 40:21, 48:13, 58:13
**cash** [1] - 26:6
**category** [1] - 54:20
**CATHERINE** [1] - 1:10
**caution** [1] - 57:23
**CCB-17-106** [2] - 1:4, 3:6
**cell** [3] - 59:3, 60:3, 60:8
**certain** [4] - 16:2, 22:21, 58:24, 60:23
**certainly** [6] - 21:7, 24:10, 31:16, 50:22, 51:1, 57:13
**CERTIFICATE** [1] - 62:1
**certify** [1] - 62:7
**chair** [1] - 3:15
**challenged** [1] - 19:6
**chambers** [2] - 58:2, 61:16
**changed** [2] - 21:4, 23:19
**characterize** [3] - 22:4, 22:6, 55:2
**characterizes** [2] - 20:9, 30:24
**characterizing** [1] - 55:12
**charge** [7] - 24:2, 30:3, 32:11, 35:9, 35:12, 42:4, 50:24
**charged** [22] - 19:18, 21:3, 28:20, 29:11, 32:11, 34:18, 35:8, 36:6, 39:12, 40:17, 42:4, 43:15, 47:19, 48:1, 49:18, 55:21, 56:5, 56:21, 57:17, 57:18, 58:13
**charges** [5] - 8:4, 25:8, 31:17, 36:1, 51:6

**charging** [3] - 8:4, 31:20, 42:3
**children** [1] - 5:7
**Christmas** [1] - 21:8
**Circuit** [5] - 31:18, 35:20, 35:21, 36:1, 40:19
**circumstances** [1] - 16:3
**cite** [2] - 25:13, 25:20, 35:14, 35:24
**cited** [2] - 29:7, 29:8, 35:19
**cites** [1] - 27:13
**citizen** [1] - 44:15
**City** [7] - 5:23, 10:16, 16:13, 39:2, 40:18, 40:19, 41:8
**city** [2] - 39:3, 50:11
**civil** [1] - 51:17
**CJA** [1] - 3:14
**claim** [1] - 37:8
**claimed** [1] - 22:15
**claiming** [1] - 58:24
**claims** [1] - 38:2
**classic** [1] - 29:6
**classifying** [1] - 53:16
**clear** [9] - 22:14, 22:22, 29:6, 33:10, 37:1, 42:17, 53:4, 56:14, 57:19
**cleared** [1] - 14:10
**clearly** [8] - 4:18, 18:20, 26:17, 26:19, 27:7, 36:3, 61:7
**CLERK** [4] - 4:14, 4:17, 4:21, 61:17
**Clewl** [2] - 43:17, 43:23
**client** [6] - 25:1, 34:10, 36:6, 36:8, 37:6, 41:12
**close** [4] - 16:12, 29:20, 35:15, 59:24
**co** [6] - 50:14, 55:19, 56:4, 57:16, 58:25, 60:23
**co-conspirators** [1] - 60:23
**co-defendant** [1] - 57:16
**co-defendants** [4] - 50:14, 55:19, 56:4, 58:25
**coercion** [1] - 18:11
**coexist** [1] - 51:1
**coincided** [1] - 57:2
**color** [8] - 25:19, 27:23, 29:3, 29:25, 32:14, 36:18, 46:17,

51:11
**column** [1] - 9:21
**combined** [1] - 19:3
**coming** [4] - 16:8, 21:8, 21:18, 26:24
**commit** [3] - 42:19, 42:23, 53:25
**committed** [4] - 48:6, 52:6, 53:5, 55:4
**committing** [2] - 41:25, 52:23
**common** [2] - 31:18, 31:19
**communicated** [3] - 6:4, 6:10, 14:2
**communications** [1] - 15:13
**compared** [2] - 59:2, 60:7
**comparing** [1] - 59:7
**comparison** [1] - 59:14
**compelled** [1] - 8:12
**competent** [1] - 55:5
**complete** [2] - 50:23, 51:5
**completely** [6] - 25:11, 26:13, 27:21, 28:15, 33:22
**compliance** [1] - 18:13
**components** [1] - 31:21
**concede** [1] - 50:16
**conceding** [1] - 50:21
**concerning** [1] - 55:6
**concerns** [2] - 23:14, 24:9
**conclude** [1] - 32:17
**concluded** [2] - 33:11, 61:19
**conclusion** [5] - 34:16, 53:18, 53:20, 54:12, 54:14
**condition** [4] - 13:5, 13:13, 13:16, 18:6
**conduct** [7] - 39:8, 39:16, 40:20, 44:3, 49:11, 55:6, 56:5
**conducted** [2] - 11:8, 60:7
**Conference** [1] - 62:11
**confidence** [4] - 28:17, 33:20, 34:7, 35:1
**conformance** [1] - 62:11
**confuse** [1] - 29:14
**confused** [1] - 13:6

confusing [1] - 28:10
Congress [3] - 31:16,
31:22, 33:12
conjunctively [1] -
31:21
connected [1] - 52:11
consent [13] - 8:25,
10:1, 27:20, 28:21,
28:22, 29:24, 30:4,
32:13, 32:19, 32:25,
33:6, 36:10, 45:18
consented [2] - 33:4,
58:16
consents [1] - 29:24
consider [2] - 28:10,
39:7
consideration [2] -
21:5, 21:17
conspiracy [4] -
55:22, 57:17, 61:2
conspirators [1] -
60:23
constitute [1] - 54:4
constituted [1] - 31:9
constitutes [1] - 8:11
constitutional [1] -
18:12
construct [1] - 55:17
contacted [3] - 10:16,
16:14, 16:23
contained [2] - 20:5,
20:13
contains [2] - 7:1, 7:2
contemplates [1] -
22:12
continue [2] - 7:17,
61:11
continuing [1] - 24:16
control [6] - 40:24,
40:25, 48:5, 48:10,
48:23, 49:16
conversation [7] -
10:20, 10:22, 11:1,
11:7, 12:13, 43:17,
58:5
conversations [5] -
6:1, 12:24, 13:10,
13:12, 13:15
conversion [1] - 52:14
conversions/thefts
[1] - 53:6
converts [1] - 40:14
corners [1] - 22:8
correct [33] - 10:14,
10:17, 10:20, 10:21,
11:1, 11:23, 11:24,
12:2, 12:14, 12:15,
13:1, 13:2, 13:3,
13:5, 13:22, 13:23,
13:25, 14:7, 14:10,

14:11, 14:14, 14:20,
15:6, 15:20, 15:21,
15:25, 16:5, 16:7,
17:1, 19:19, 37:15,
56:9, 62:8
corrected [1] - 56:12
corruption [1] - 5:6
Costello [2] - 30:25,
31:8
couch [1] - 41:23
counsel [9] - 3:7,
18:21, 22:6, 47:12,
55:5, 58:2, 58:6,
58:15, 59:17
Count [17] - 24:18,
27:11, 27:12, 29:16,
29:22, 30:5, 33:17,
37:8, 37:14, 37:15,
37:16, 37:18, 37:22,
38:1, 38:2, 38:8
count [13] - 25:8, 25:9,
30:8, 34:14, 34:19,
35:6, 35:23, 36:2,
36:4, 36:9, 36:10,
36:19
counter [1] - 8:2
country [1] - 58:23
counts [6] - 19:5,
33:10, 34:2, 34:10,
36:3, 38:10
Counts [6] - 19:7,
19:10, 19:12, 19:15,
37:5, 38:9
County [1] - 43:20
course [5] - 10:7,
45:15, 47:19, 60:24,
61:1
COURT [82] - 1:1, 3:3,
3:10, 3:17, 3:21,
3:24, 4:13, 6:8, 10:5,
10:7, 13:6, 17:4,
17:9, 17:17, 17:19,
17:22, 18:22, 19:1,
19:11, 19:25, 20:13,
20:19, 20:23, 23:15,
23:20, 24:4, 24:16,
24:24, 30:2, 30:13,
30:19, 30:21, 31:24,
33:14, 34:9, 35:2,
35:14, 36:5, 36:21,
36:24, 37:3, 37:6,
37:12, 37:16, 37:25,
38:7, 40:4, 41:3,
41:10, 43:11, 43:22,
44:22, 45:3, 45:10,
45:12, 45:15, 45:24,
46:1, 47:9, 47:12,
47:16, 47:21, 47:25,
49:25, 51:13, 51:15,
51:22, 52:18, 54:23,

54:25, 56:8, 56:14,
57:8, 58:8, 59:22,
60:10, 60:16, 60:19,
60:22, 61:11, 61:15,
62:18
court [2] - 8:17, 38:15
Court [29] - 1:24, 17:8,
23:18, 27:11, 29:5,
29:15, 29:19, 29:20,
31:6, 31:8, 31:11,
33:18, 35:19, 38:23,
39:11, 40:19, 42:7,
42:10, 42:12, 42:13,
42:14, 44:9, 55:19,
55:25, 58:11, 60:14,
61:17, 62:6
Court's [5] - 12:16,
15:22, 18:20, 30:24,
41:17
Courtroom [1] - 1:9
courts [1] - 50:11
credibility [1] - 53:8
crime [12] - 27:8,
27:17, 27:18, 27:21,
27:22, 27:23, 30:1,
36:20, 39:9, 39:10,
48:1, 48:6
crimes [15] - 5:7,
25:18, 27:12, 27:25,
28:1, 28:7, 28:20,
29:14, 34:15, 34:16,
34:18, 35:7, 35:11,
37:9
Criminal [1] - 3:6
criminal [5] - 7:1,
8:10, 19:18, 46:25,
55:2
CRIMINAL [1] - 1:4
critical [1] - 59:6
cross [4] - 53:11,
53:14, 59:25, 60:6
CROSS [1] - 2:3
cross-examination [1]
- 53:11
cross-examining [1] -
59:25
CRR [2] - 1:23, 62:17
cure [1] - 33:19
custodial [1] - 4:11
custody [4] - 5:21,
40:13, 41:5, 41:6
customarily [1] -
57:16
cut [1] - 48:24

D

DANIEL [1] - 1:5
Daniel [2] - 1:14, 3:16
date [4] - 5:17, 10:23,

22:16, 58:1
Dated [1] - 62:14
dates [3] - 16:8, 22:15,
23:5
deadline [1] - 21:25
deal [2] - 19:8, 19:10,
25:13, 29:19
dealing [3] - 10:12,
13:25, 44:17
dealings [1] - 12:4
death [1] - 27:6
December [1] - 1:8
decide [3] - 8:22,
32:21, 33:8
decided [2] - 27:7,
51:17
decides [1] - 52:13
deciding [1] - 50:17
decision [1] - 60:14
decisions [1] - 30:24
defend [2] - 27:9,
48:22
defendant [11] - 23:6,
26:17, 27:8, 28:11,
28:23, 31:3, 34:15,
36:14, 46:25, 55:24,
57:16
Defendant [3] - 1:14,
1:16, 1:18
defendant's [2] -
30:22, 59:7
defendants [14] -
23:8, 25:2, 26:25,
27:1, 50:14, 53:21,
54:15, 55:2, 55:19,
56:4, 57:11, 58:25,
59:3
Defendants [1] - 1:7
Defense [2] - 25:23,
26:23
defense [19] - 22:6,
30:9, 38:21, 44:10,
44:24, 47:12, 47:24,
49:23, 50:22, 50:24,
51:5, 51:7, 51:10,
58:6, 58:15, 59:11,
59:17, 61:10
defer [4] - 19:14,
20:21, 36:24, 52:18
deferring [2] - 24:7,
38:8
defined [1] - 31:11
definitely [2] - 61:6,
61:9
definition [1] - 46:22
degree [1] - 33:2
delay [1] - 54:7
deliberately [1] -
23:12
deliberations [1] -

31:4
denied [1] - 54:22
deny [2] - 19:2, 19:12
denying [4] - 18:13,
57:23, 60:22, 60:24
Department [9] - 5:12,
5:23, 10:16, 12:1,
14:24, 16:5, 16:13,
58:12, 58:18
department [1] - 45:20
Derek [2] - 1:13, 3:7
describe [5] - 5:18,
14:1, 55:17, 55:20,
56:5
description [1] - 7:2
detail [1] - 19:2
detailed [2] - 23:3,
23:4
detained [1] - 48:17
Detective [18] - 6:2,
6:16, 38:25, 39:22,
43:17, 43:23, 44:1,
44:15, 46:7, 46:14,
46:16, 48:16, 49:11,
52:5, 55:9, 55:10,
57:2
detective [1] - 44:8
detectives [1] - 55:4
determination [4] -
46:13, 51:21, 57:4,
57:22
device [1] - 17:6
difference [3] - 32:12,
32:13, 48:12
different [12] - 5:5,
21:14, 27:22, 28:3,
40:5, 40:22, 41:5,
54:20, 56:25, 58:21
differently [2] - 38:3,
41:24
difficult [4] - 21:16,
50:10, 50:17, 50:20
difficulties [1] - 5:9
dilute [1] - 28:15
direct [1] - 10:4
DIRECT [1] - 2:3
disagree [1] - 21:21
disagreeing [1] -
37:23
disciplinary [1] - 8:14
disclosed [1] - 22:21
disclosing [1] - 20:17
discovery [3] - 19:3,
20:25, 22:23
discuss [2] - 58:2,
61:11
discussions [2] -
38:24, 61:5
disjunctive [1] - 31:21
dismiss [4] - 24:18,

29:15, 37:8, 38:1
**Dismiss** [1] - 19:5
**dismissal** [1] - 29:21
**dismissed** [3] - 29:16, 32:5, 38:10
**dispositive** [1] - 57:20
**distinct** [9] - 27:12, 27:25, 28:7, 28:20, 35:7, 35:11, 43:6
**distribute** [2] - 55:21, 55:22
**District** [4] - 25:21, 37:21, 62:6
**DISTRICT** [2] - 1:1, 1:1
**district** [5] - 26:3, 26:22, 32:6, 38:18
**DIVISION** [1] - 1:2
**division** [1] - 5:6
**document** [5] - 7:1, 8:4, 20:2, 31:20, 42:4
**done** [3] - 40:21, 48:5, 54:22
**down** [15] - 9:9, 17:12, 18:23, 23:17, 26:25, 28:3, 28:15, 35:13, 37:20, 42:18, 46:25, 48:4, 48:23, 50:10, 52:12
**downtown** [2] - 48:19, 59:10
**drafted** [1] - 33:13
**draw** [3] - 53:20, 54:15
**drink** [1] - 18:8
**drugs** [2] - 44:18, 52:10
**due** [6] - 16:11, 20:5, 21:4, 21:17, 28:24, 31:2
**duplicitous** [17] - 24:18, 25:8, 25:15, 26:10, 26:15, 28:17, 29:6, 29:9, 35:20, 35:21, 35:22, 36:1, 36:3, 36:4, 37:18, 38:9, 52:19
**during** [7] - 6:12, 7:14, 7:22, 8:20, 10:22, 10:25, 11:6
**duties** [1] - 8:13
**duty** [1] - 41:6

### E

**e-mails** [1] - 38:24
**EARL** [1] - 1:5
**early** [1] - 22:14
**Eastern** [2] - 25:21, 37:21
**easy** [2] - 37:9, 50:11

**ECF** [1] - 24:19
**effect** [1] - 29:22
**either** [8] - 14:25, 29:11, 39:14, 47:12, 51:10, 52:3, 53:8, 60:5
**element** [2] - 25:12, 32:24
**elements** [8] - 27:8, 27:22, 27:25, 28:7, 33:21, 53:22, 53:23, 54:20
**Ellis** [1] - 37:20
**employee** [5] - 26:7, 26:17, 27:3, 27:5, 27:6
**employee's** [1] - 27:3
**employer** [1] - 8:15
**enable** [1] - 31:3
**end** [1] - 59:16
**enforcement** [2] - 59:1, 59:14
**engage** [1] - 6:1
**engaged** [2] - 39:2, 49:10
**entering** [1] - 6:19
**entire** [1] - 27:13
**entities** [1] - 58:13
**entitled** [4] - 38:17, 47:6, 62:10
**entity** [2] - 58:12, 58:18
**envelope** [1] - 48:19
**episode** [1] - 50:7
**episodes** [1] - 49:5
**equally** [1] - 51:25
**equipment** [1] - 5:25
**especially** [1] - 38:17
**Esquire** [4] - 1:12, 1:13, 1:15, 1:17, 1:19, 1:21
**essence** [1] - 57:1
**essentially** [3] - 19:20, 20:1, 48:1
**event** [3] - 15:14, 50:4, 57:10
**events** [2] - 40:8, 45:15
**eventually** [2] - 14:17, 44:8
**evidence** [23] - 4:6, 4:9, 17:13, 17:16, 18:9, 19:17, 20:5, 20:16, 22:25, 23:1, 39:21, 40:10, 40:24, 40:25, 45:20, 47:5, 48:5, 48:10, 48:19, 48:23, 49:16, 58:20
**exactly** [4] - 15:1, 20:18, 34:24, 45:3

**examination** [1] - 53:11
**examined** [1] - 6:6
**examining** [1] - 59:25
**example** [1] - 18:18
**except** [1] - 57:25
**Exclude** [1] - 19:17
**excluding** [2] - 60:23, 61:3
**execute** [1] - 32:22
**exercise** [1] - 59:14
**Exhibit** [9] - 6:23, 6:25, 9:15, 9:18, 17:9, 25:23, 26:24
**exhibits** [1] - 7:3
**existed** [1] - 42:6
**exists** [1] - 50:18
**expect** [2] - 20:9, 24:13
**experience** [3] - 3:14, 12:3, 12:5
**experiencing** [1] - 6:5
**expert** [6] - 59:5, 59:12, 59:18, 60:1, 60:5
**explained** [1] - 6:13
**extent** [3] - 25:2, 30:15, 38:1
**extortion** [23] - 25:18, 25:19, 27:19, 29:2, 29:11, 30:4, 32:13, 32:14, 34:3, 34:23, 36:9, 39:10, 39:14, 45:21, 45:22, 45:24, 48:11, 52:3, 52:4
**extortions** [3] - 51:10, 51:11
**extraordinarily** [1] - 56:6
**extraordinary** [1] - 38:16

### F

**F.2d** [1] - 35:25
**fabricated** [1] - 47:2
**fabrication** [1] - 49:14
**face** [12] - 31:1, 31:10, 31:12, 33:17, 33:19, 35:6, 35:22, 37:19, 40:1, 42:9, 43:5
**facility** [1] - 16:22
**fact** [11] - 12:10, 21:23, 31:5, 42:1, 46:5, 48:9, 49:1, 54:3, 54:9, 54:14, 58:11
**facts** [7] - 30:10, 32:9, 32:16, 33:11, 52:1, 52:4, 55:5

**factual** [2] - 32:21, 33:8
**factually** [2] - 41:18, 56:20
**failure** [1] - 37:8
**fair** [3] - 7:10, 15:17, 34:10
**far** [6] - 15:2, 19:15, 34:4, 37:22, 53:22, 61:6
**FBI** [2] - 5:2, 16:12
**fear** [4] - 26:8, 27:4, 27:16, 46:2
**fearful** [1] - 21:22
**FEDERAL** [1] - 62:18
**Federal** [2] - 1:24, 4:25
**federal** [1] - 38:15
**few** [4] - 44:19, 46:9, 60:19, 61:16
**Fifth** [6] - 28:11, 28:14, 28:22, 30:23, 31:2, 33:24
**fight** [1] - 33:1
**file** [6] - 24:21, 26:2, 29:17, 54:6, 58:10, 59:16
**filed** [6] - 4:4, 18:16, 18:21, 24:17, 38:14, 58:1
**findings** [1] - 56:1
**fine** [4] - 23:23, 25:3, 51:23, 60:11
**finish** [1] - 12:23
**firearm** [1] - 6:19
**first** [12] - 7:11, 7:14, 7:22, 10:12, 23:22, 27:10, 27:17, 27:22, 28:11, 38:14, 42:21, 46:6
**five** [4] - 39:6, 40:8, 49:4, 55:2
**flavor** [1] - 41:21
**flip** [1] - 7:4
**Floor** [1] - 1:24
**folks** [1] - 6:16
**follow** [1] - 49:25
**follow-up** [1] - 49:25
**followed** [1] - 8:3
**FOR** [1] - 1:1
**Force** [1] - 1:21
**force** [43] - 3:8, 16:1, 25:14, 25:18, 26:2, 26:8, 26:11, 26:14, 26:18, 26:21, 26:23, 27:4, 27:15, 27:18, 27:19, 27:21, 28:21, 29:2, 29:3, 34:3, 34:4, 34:22, 34:23, 39:1, 39:2, 39:18,

**factual** (continued)
39:19, 46:1, 46:20, 46:23, 53:25, 55:8
**foregoing** [1] - 62:8
**form** [7] - 8:5, 8:25, 9:13, 10:1, 22:23, 33:18
**format** [1] - 62:10
**former** [2] - 55:3, 55:10
**formula** [1] - 25:7
**forth** [2] - 31:12, 61:2
**four** [2] - 22:8, 55:3
**Fourth** [7] - 28:24, 28:25, 30:23, 31:18, 35:20, 36:1, 40:4
**fourth** [1] - 35:21
**frankly** [4] - 34:19, 35:17, 55:18, 59:12
**fraud** [3] - 39:13, 39:14, 58:21
**front** [2] - 18:1, 55:3
**funds** [1] - 51:2
**furtherance** [1] - 61:2
**future** [2] - 27:5, 27:16

### G

**Gas** [1] - 27:3
**Gazic** [2] - 1:23, 62:5
**GAZIC** [1] - 62:17
**generally** [2] - 31:12, 31:25
**generate** [2] - 45:1, 46:4, 47:5
**generated** [3] - 47:1, 52:1, 52:2
**generates** [2] - 46:5, 47:6
**gentlemen** [2] - 42:19, 53:5
**given** [3] - 32:19, 38:23, 45:19
**glad** [2] - 3:17, 3:24
**glean** [1] - 44:6
**Gondo** [4] - 42:22, 53:9, 55:14, 57:2
**Gondo's** [1] - 41:19
**goods** [1] - 39:18
**Government** [34] - 12:17, 17:9, 19:23, 21:9, 23:19, 25:11, 29:7, 29:17, 29:23, 30:14, 33:16, 34:1, 34:21, 36:12, 37:17, 38:19, 38:20, 38:24, 39:21, 40:22, 41:23, 43:10, 44:7, 46:10, 52:2, 52:21, 53:9, 54:5, 54:11, 54:25, 57:14, 59:24, 60:25,

61:5
**Government's** [10] - 6:22, 6:23, 6:25, 18:19, 20:3, 25:6, 25:10, 28:2, 28:25, 41:1
**grand** [26] - 22:2, 26:19, 27:7, 28:11, 28:12, 28:13, 28:14, 28:16, 28:18, 31:4, 31:9, 33:20, 33:24, 33:25, 34:2, 34:13, 34:14, 34:16, 34:20, 34:25, 35:3, 36:13, 36:15, 36:17
**grant** [1] - 29:21
**great** [1] - 50:8
**grips** [2] - 54:8, 54:9
**guess** [1] - 51:12
**guidelines** [2] - 54:1, 55:7
**guilt** [2] - 56:1, 57:18
**guilty** [2] - 55:25, 57:12
**gun** [5] - 15:9, 39:1, 43:1, 44:18
**gunpoint** [1] - 26:17
**guns** [5] - 15:6, 39:3, 39:4, 40:11, 52:10

**H**

**half** [1] - 21:7
**Hamiltons** [1] - 44:4
**Hamling** [2] - 30:25, 31:11
**hand** [3] - 4:15, 9:21, 57:13
**handful** [2] - 39:6, 46:7
**handgun** [1] - 29:22
**hard** [3] - 13:24, 14:1, 24:12
**head** [1] - 19:23
**Headquarters** [1] - 48:4
**health** [1] - 6:5
**hear** [5] - 4:7, 24:13, 37:13, 41:17, 51:7
**heard** [7] - 18:1, 18:17, 24:19, 30:14, 38:1, 38:3, 59:17
**Hearing** [1] - 2:2
**HEARING** [1] - 1:5
**hearing** [3] - 3:9, 4:1, 4:6
**hearsay** [1] - 60:23
**held** [1] - 62:9
**Hendrix** [1] - 55:15
**hereby** [1] - 62:7

**HERSL** [1] - 1:5
**Hersl** [25] - 1:14, 3:5, 3:16, 3:18, 19:15, 20:2, 21:1, 24:18, 31:17, 38:25, 39:22, 40:9, 40:20, 40:23, 44:1, 44:15, 46:7, 46:14, 46:16, 48:16, 49:5, 49:11, 52:5, 55:14, 57:2
**Hersl's** [2] - 19:8, 49:6
**hidden** [1] - 30:9
**himself** [2] - 28:23, 49:23
**HINES** [7] - 4:10, 4:23, 5:8, 5:10, 10:3, 17:5, 17:21
**Hines** [5] - 1:13, 2:5, 3:7, 17:4, 17:20
**history** [1] - 40:18
**Hobbs** [17] - 26:2, 26:22, 28:6, 29:10, 29:11, 29:25, 31:23, 31:25, 32:4, 32:12, 32:18, 33:10, 34:22, 36:8, 39:14
**hodgepodge** [1] - 36:16
**hold** [2] - 16:12, 21:10
**holidays** [1] - 21:18
**home** [1] - 42:24
**Honor** [38] - 3:4, 3:19, 3:22, 4:10, 5:8, 10:3, 10:6, 17:3, 17:5, 17:15, 17:21, 18:18, 20:7, 21:22, 22:10, 22:13, 22:20, 24:20, 25:4, 30:17, 30:20, 30:22, 33:15, 36:23, 37:1, 37:9, 38:6, 47:15, 47:17, 51:9, 54:24, 55:1, 55:3, 56:9, 58:4, 59:21, 60:13, 61:14
**Honorable** [1] - 61:17
**HONORABLE** [1] - 1:10
**hopes** [1] - 3:13
**hours** [1] - 17:7
**house** [4] - 42:23, 42:25, 54:17, 59:9
**housebreaking** [1] - 54:18
**HT** [3] - 46:14, 46:16, 48:15
**huge** [1] - 61:7
**hum** [1] - 43:22
**hundreds** [6] - 39:4, 39:7, 44:19, 46:6, 46:7

**I**

**IA** [2] - 11:21, 15:23
**idea** [2] - 50:23, 55:16
**identical** [2] - 26:1, 37:7
**identify** [1] - 21:11
**ignores** [1] - 30:24
**image** [1] - 36:16
**immediate** [2] - 27:5, 27:16
**impeach** [1] - 53:8
**implicated** [1] - 29:1
**important** [3] - 26:5, 27:1, 58:9
**impose** [1] - 57:9
**improper** [1] - 28:17
**IN** [1] - 1:1
**inaccurate** [1] - 50:25
**inartful** [1] - 49:19
**inarticulately** [1] - 54:16
**incident** [5] - 22:17, 22:24, 23:11, 43:19, 50:7
**incidents** [7] - 22:15, 39:7, 39:8, 39:19, 39:22, 44:17
**included** [1] - 32:4
**including** [1] - 5:6
**inconsistent** [2] - 33:21, 33:22
**incredibly** [2] - 50:10, 50:17
**indicated** [1] - 12:25
**indicates** [1] - 7:2
**indictment** [34] - 19:3, 19:18, 21:2, 21:3, 22:8, 23:3, 23:4, 23:5, 23:22, 25:8, 25:23, 25:25, 28:10, 28:17, 29:7, 29:8, 30:25, 31:3, 31:8, 31:14, 31:15, 32:5, 33:16, 33:17, 33:19, 33:23, 34:6, 34:8, 34:17, 35:6, 35:22, 36:1, 36:6, 38:10
**indictments** [6] - 26:22, 29:10, 31:12, 32:1, 32:6, 35:12
**individual** [1] - 57:22
**individualized** [1] - 56:1
**individuals** [1] - 15:16
**induce** [4] - 7:19, 45:17, 45:18, 56:17
**induced** [1] - 27:20
**indulgence** [2] - 12:16, 15:22

**inevitably** [1] - 22:5
**infirmities** [1] - 19:13
**informant** [1] - 51:4
**information** [22] - 8:12, 9:20, 11:25, 13:19, 13:20, 13:21, 14:15, 15:11, 16:4, 16:10, 16:12, 20:8, 22:3, 22:21, 23:13, 38:17, 44:6, 44:7, 44:22, 47:7, 59:1, 61:8
**informed** [1] - 28:24
**initial** [2] - 9:5, 9:8
**initialed** [1] - 9:13
**initials** [6] - 9:22, 9:23, 23:7, 23:9, 23:11, 43:19
**injury** [4] - 26:8, 27:5, 27:6, 27:16
**inquire** [1] - 12:13
**inquiries** [2] - 6:18, 11:23
**inquiry** [1] - 12:8
**instance** [1] - 19:4
**instances** [3] - 32:24, 33:5, 49:13
**instructed** [2] - 51:20, 60:25
**instruction** [3] - 28:4, 33:9, 57:19
**instructions** [3] - 28:6, 29:13, 36:17
**instructs** [1] - 55:25
**intellectually** [1] - 42:10
**intelligently** [1] - 54:8
**intend** [1] - 39:25
**intended** [5] - 39:25, 42:22, 44:12, 46:15
**intent** [16] - 40:2, 41:10, 42:9, 44:13, 45:5, 45:7, 46:8, 48:14, 48:20, 49:20, 50:25, 51:1, 52:9, 55:21
**interacted** [1] - 23:9
**interactions** [1] - 6:4
**interest** [3] - 12:9, 12:12, 17:7
**Internal** [6] - 5:22, 6:15, 10:24, 11:8, 11:18, 14:7
**interrupts** [1] - 12:22
**interview** [8] - 5:19, 5:24, 6:2, 6:15, 7:11, 7:17, 11:4, 11:7
**interviewed** [2] - 5:17, 14:12
**interviewer** [1] - 5:16

**interviewing** [1] - 14:22
**interviews** [1] - 5:12
**intrinsic** [5] - 19:17, 19:22, 20:10, 21:10, 24:1
**invade** [1] - 31:4
**invalid** [2] - 33:17, 37:18
**inventory** [2] - 44:21, 52:13
**investigation** [4] - 8:10, 8:14, 16:3, 44:3
**Investigation** [1] - 5:1
**investigations** [1] - 16:11
**involve** [4] - 31:19, 40:9, 44:20, 59:5
**involved** [2] - 11:13, 15:15
**involvement** [1] - 5:20
**involving** [7] - 7:6, 39:22, 43:20, 46:6, 51:17, 60:3
**issue** [15] - 14:3, 14:11, 14:13, 20:24, 22:20, 28:3, 31:3, 37:14, 41:4, 49:4, 51:16, 55:13, 58:20, 59:11, 61:10
**issues** [9] - 4:2, 6:5, 20:21, 22:10, 32:21, 33:8, 40:4, 58:6, 60:3
**items** [2] - 7:3, 40:12
**itself** [8] - 19:13, 26:14, 29:12, 31:13, 39:16, 39:17, 51:18, 53:24

**J**

**Jack** [1] - 23:17
**January** [1] - 62:14
**Jencks** [12] - 20:5, 20:8, 20:14, 20:19, 20:21, 21:25, 22:2, 22:10, 22:14, 23:1, 24:9, 24:11
**Jenifer** [2] - 1:19, 3:22
**JENKINS** [1] - 1:5
**Jenkins** [3] - 1:16, 3:5, 3:20
**Jensen** [1] - 59:2
**John** [3] - 1:21, 3:8, 44:16
**Johnson** [1] - 26:11
**join** [2] - 19:9, 24:21
**joined** [1] - 3:12

joining [2] - 24:22, 30:15
JUDGE [1] - 1:10
Judge [6] - 3:11, 23:16, 26:24, 30:12, 37:20, 56:15
judge [2] - 20:22, 38:13
judges [1] - 50:19
judicial [1] - 58:11
Judicial [1] - 62:11
July [2] - 36:7, 43:19
jumping [1] - 23:17
junior [1] - 26:16
jurors [3] - 26:20, 28:19, 33:20
jury [56] - 22:2, 26:19, 27:7, 28:4, 28:5, 28:11, 28:12, 28:13, 28:14, 28:16, 28:18, 31:4, 31:9, 32:9, 32:16, 32:21, 32:25, 33:8, 33:18, 33:24, 33:25, 34:2, 34:13, 34:14, 34:16, 34:20, 34:25, 35:3, 36:14, 36:15, 36:17, 41:11, 42:13, 44:11, 45:1, 45:3, 45:9, 46:13, 47:1, 50:16, 51:18, 51:19, 51:20, 52:2, 52:16, 53:18, 53:20, 54:15, 55:13, 55:22, 56:1, 57:3, 57:21, 60:24

K
keep [1] - 23:16
kept [2] - 16:12, 49:21
kill [1] - 43:4
kind [5] - 24:3, 53:11, 59:18, 60:6
kinds [2] - 5:4, 58:22
knows [4] - 21:14, 39:11, 43:14, 56:23

L
labeled [1] - 19:22
language [3] - 25:15, 31:15, 55:23
last [3] - 21:21, 51:14, 56:15
late [1] - 24:3
law [8] - 8:11, 25:19, 29:25, 36:18, 46:17, 50:20, 59:1, 59:14
lawful [8] - 39:22, 40:13, 41:5, 41:25,

46:20, 48:3, 52:11
lawfully [1] - 52:15
lawyer [7] - 8:17, 8:19, 8:21, 8:23, 9:3, 11:4, 11:7
lawyers [2] - 26:9, 56:18
learn [1] - 15:8
learned [2] - 13:21, 43:23
least [8] - 15:23, 21:14, 23:19, 26:19, 43:16, 49:13, 51:11, 56:22
leaving [1] - 14:18
Lee [1] - 26:16
left [2] - 9:21, 15:9
legal [6] - 31:9, 53:18, 54:14, 58:12, 58:13, 58:18
legality [1] - 38:20
legally [2] - 50:25, 54:9
legitimate [1] - 43:24, 44:13
lengthy [1] - 55:5
Leo [2] - 1:12, 3:7
lesser [1] - 42:4
letting [2] - 24:11, 59:24
LEVIN [7] - 3:19, 30:17, 37:1, 37:4, 38:4, 47:14, 54:24
Levin [2] - 1:17, 3:20
Liberty [1] - 27:3
likely [2] - 58:10, 59:2
limine [5] - 22:11, 52:20, 57:23, 58:10, 59:16
limited [3] - 16:3, 46:10, 53:15
limiting [1] - 57:19
line [4] - 9:5, 9:9, 9:13, 12:21
list [1] - 18:23
listed [1] - 7:3
literally [1] - 27:24
lo [3] - 28:5, 42:25, 54:4
location [6] - 11:12, 41:13, 59:3, 59:6, 59:7, 60:8
logical [1] - 16:6
Lombard [1] - 1:24
look [6] - 31:3, 35:9, 39:3, 52:24, 53:21, 56:17
looked [1] - 12:20
looking [3] - 3:14, 34:11, 44:22

M
ma'am [5] - 10:11, 12:19, 13:18, 14:21, 17:2
magic [1] - 55:17
magically [1] - 51:6
mails [1] - 38:24
majority [1] - 26:19
man [1] - 48:17
March [9] - 5:13, 10:12, 11:9, 15:25, 16:5, 16:7, 16:8, 16:15, 18:3
MARCUS [1] - 1:6
Marcus [3] - 1:18, 5:17, 9:25
marked [2] - 6:22, 25:23
MARYLAND [1] - 1:1
Maryland [4] - 1:9, 1:25, 48:14, 62:7
material [2] - 22:2, 22:10
materials [1] - 38:11
matter [6] - 6:20, 8:9, 14:5, 41:25, 47:7, 62:10
matters [1] - 5:7
meanwhile [1] - 59:9
mechanism [1] - 58:14
medical [4] - 14:3, 14:6, 14:10, 18:6
meet [1] - 24:13
meeting [2] - 10:24, 11:18
meets [1] - 46:22
member [2] - 3:13
mens [1] - 46:25
mention [1] - 58:15
mentioned [4] - 23:18, 38:23, 50:1, 58:14
merchandise [1] - 26:6
Merit [1] - 62:5
merits [1] - 31:10
Michigan [1] - 25:22
microphone [1] - 4:18
Middle [1] - 59:9
might [3] - 19:21, 22:6, 35:3

mind [2] - 50:23, 55:11
minute [1] - 7:9
minutes [8] - 7:11, 7:15, 7:17, 7:22, 8:3, 14:17, 14:19, 61:16
Miranda [7] - 7:23, 7:25, 8:5, 9:10, 9:12, 18:4, 18:13
misread [1] - 29:9
misreading [1] - 30:7
miss [1] - 18:23
misses [1] - 25:11
missing [2] - 33:16, 57:6
moment [2] - 37:18, 41:11
money [19] - 27:2, 40:11, 40:15, 40:24, 40:25, 41:6, 41:8, 42:5, 43:4, 44:14, 45:8, 46:15, 49:5, 49:15, 49:16, 52:10, 52:15, 57:6
monies [1] - 53:6
Morgan [7] - 25:20, 25:21, 25:24, 26:6, 26:9, 26:16, 29:8
morning [3] - 13:24, 14:6, 59:8
most [3] - 5:6, 57:25, 59:1
Motion [6] - 4:4, 4:8, 4:9, 17:24, 19:5, 19:17
motion [33] - 4:6, 4:8, 17:14, 17:25, 18:14, 18:24, 20:1, 23:18, 24:18, 24:21, 24:22, 24:25, 25:1, 30:11, 36:22, 37:2, 37:8, 37:19, 37:20, 38:1, 38:8, 38:11, 38:14, 41:22, 43:9, 52:20, 52:25, 57:23, 58:1, 58:3, 58:4, 58:10, 59:16
Motions [1] - 2:2
MOTIONS [1] - 1:5
motions [10] - 3:9, 4:1, 7:2, 18:16, 18:21, 19:8, 22:11, 24:17, 38:10, 38:16
move [1] - 43:3
MR [72] - 3:4, 3:11, 3:19, 4:10, 4:23, 5:8, 5:10, 10:3, 17:5, 17:21, 20:7, 20:18, 20:22, 20:24, 21:21, 22:13, 22:20, 23:16,

23:21, 24:15, 24:20, 25:4, 30:5, 30:17, 30:22, 32:8, 33:15, 34:12, 35:5, 35:17, 36:11, 36:23, 37:1, 37:4, 37:9, 37:13, 37:23, 38:4, 38:13, 40:6, 41:4, 41:17, 43:12, 43:23, 44:25, 45:4, 45:11, 45:14, 45:22, 45:25, 46:3, 47:10, 47:14, 47:17, 47:23, 48:12, 50:6, 51:14, 51:16, 51:24, 52:24, 54:24, 55:1, 56:12, 56:15, 58:4, 58:9, 59:21, 59:23, 60:4, 60:12, 61:14
MS [20] - 3:22, 6:7, 10:6, 10:9, 13:7, 13:8, 17:15, 17:18, 18:18, 18:25, 19:7, 19:24, 30:20, 38:5, 47:15, 56:9, 60:13, 60:17, 60:21, 61:4
muddled [3] - 28:10, 31:14, 34:6
multiple [7] - 21:13, 21:15, 26:11, 35:8, 35:9, 39:17, 40:18
multiplicitas [1] - 34:11
must [3] - 8:8, 31:20, 52:16
mutually [1] - 33:21

N
NADINE [1] - 62:17
Nadine [2] - 1:23, 62:5
name [3] - 4:18, 4:19, 56:10
names [2] - 23:4, 43:18
narcotics [1] - 40:11
nature [2] - 8:10, 18:8
navigate [1] - 50:11
near [1] - 59:8
necessarily [2] - 22:7, 51:22
need [4] - 20:20, 22:11, 22:17, 59:18
needed [2] - 6:11, 11:4, 11:7
needs [1] - 17:25
never [2] - 49:7, 56:3
New [1] - 21:8
next [4] - 7:4, 37:7, 49:2, 52:20
night [1] - 48:24

**nine** [4] - 7:11, 7:15, 7:17, 7:22
**NO** [1] - 1:4
**none** [2] - 51:5, 51:6
**nonresponsive** [1] - 6:7
**normal** [1] - 41:14
**normally** [4] - 32:1, 33:3, 38:16, 40:1, 53:11, 53:15
**NORTHERN** [1] - 1:2
**nothing** [4] - 6:4, 44:2, 44:15, 44:16
**notice** [15] - 21:6, 21:9, 21:16, 22:18, 23:2, 23:3, 23:6, 23:13, 23:24, 24:3, 24:4, 26:18, 31:17, 58:11, 60:5
**November** [1] - 48:16
**nuanced** [1] - 50:20
**Number** [1] - 3:6
**number** [23] - 4:2, 4:8, 5:5, 7:1, 7:5, 8:2, 12:8, 12:17, 18:15, 19:1, 20:2, 24:19, 24:25, 26:24, 32:24, 37:7, 38:11, 49:10, 50:2, 52:20, 61:12
**numbers** [1] - 28:18
**numerous** [1] - 38:24

## O

**object** [2] - 58:17, 59:23
**objection** [2] - 6:7, 34:11
**observed** [1] - 14:16
**obtain** [2] - 25:22, 27:2
**obviously** [6] - 16:11, 20:25, 25:4, 32:12, 36:2, 58:25
**occasion** [1] - 49:21
**occasions** [1] - 39:17
**occur** [1] - 41:19
**occurred** [4] - 5:20, 10:22, 10:25, 43:21
**occurring** [2] - 14:25, 36:7
**occurs** [1] - 12:6
**OF** [3] - 1:1, 1:3, 62:1
**offense** [4] - 25:8, 31:13, 36:2, 55:25
**offenses** [2] - 33:21, 36:7
**offer** [2] - 17:5, 31:5
**offered** [1] - 18:8
**office** [3] - 11:21,

16:1, 16:15
**Office** [3] - 6:15, 11:8, 14:7
**officer** [15] - 3:8, 29:4, 32:22, 32:23, 40:3, 40:13, 40:14, 42:9, 46:21, 47:18, 48:2, 48:7, 51:17, 51:18, 59:15
**officers** [16] - 5:12, 6:17, 11:22, 12:1, 15:5, 15:23, 15:24, 16:1, 21:24, 29:3, 32:20, 43:8, 43:13, 45:5, 45:6, 46:23
**OFFICIAL** [2] - 62:1, 62:18
**official** [8] - 8:13, 27:23, 28:22, 30:4, 32:15, 33:7, 34:4, 51:11
**Official** [1] - 1:24
**officially** [1] - 5:19
**often** [1] - 54:16
**once** [5] - 22:21, 40:9, 40:12, 41:5, 42:2
**one** [44] - 4:3, 5:16, 7:5, 8:11, 8:21, 12:17, 15:3, 18:18, 18:25, 20:8, 20:9, 21:13, 23:8, 25:8, 25:20, 28:19, 29:14, 30:2, 32:3, 32:9, 32:13, 34:2, 34:3, 34:4, 34:18, 35:24, 36:2, 36:9, 37:7, 40:1, 40:15, 43:16, 43:19, 43:25, 49:13, 52:19, 52:20, 54:6, 54:10, 55:3, 58:16, 61:12
**ones** [3] - 39:12, 44:20, 61:9
**open** [2] - 48:24, 58:2
**operating** [1] - 41:15
**operation** [3] - 5:20, 15:14, 43:25
**operationally** [1] - 12:3
**operations** [1] - 11:14
**Operator** [1] - 1:21
**opposite** [1] - 31:7
**order** [1] - 33:24
**orders** [1] - 43:3
**ordinarily** [1] - 4:5
**original** [2] - 21:2, 23:3
**originally** [1] - 45:5
**otherwise** [2] - 17:8, 60:14

**Otis** [1] - 26:16
**outfitted** [1] - 5:25
**outside** [1] - 13:9
**overbearing** [1] - 18:11
**overhead** [2] - 25:24, 53:4
**overruled** [1] - 6:8
**overt** [2] - 21:3, 23:25
**overtime** [7] - 39:13, 58:20, 58:21, 58:24, 59:2, 59:9, 60:8
**own** [3] - 28:2, 40:15, 45:21

## P

**p.m** [1] - 3:2
**page** [5] - 12:20, 28:3, 28:4, 42:21, 62:10
**panel** [1] - 3:14
**panoply** [1] - 60:3
**paper** [1] - 47:3
**papers** [1] - 17:17
**paperwork** [1] - 50:9
**paragraph** [3] - 12:22, 12:23, 35:25
**part** [12] - 10:15, 13:20, 13:21, 15:19, 16:18, 16:20, 26:5, 27:1, 37:17, 41:12, 41:14, 48:17
**participate** [1] - 5:11
**participation** [1] - 57:7
**particular** [33] - 11:16, 21:1, 21:11, 22:17, 25:7, 25:16, 26:20, 27:9, 30:8, 35:10, 39:1, 39:13, 39:20, 40:8, 40:14, 40:21, 41:13, 44:8, 44:11, 50:2, 51:21, 51:24, 52:5, 52:17, 53:13, 53:14, 53:18, 54:13, 56:24
**particulars** [2] - 18:24, 19:4
**parties** [1] - 20:11
**party** [1] - 53:8
**passed** [2] - 5:3, 31:16
**past** [6] - 11:14, 11:15, 12:3, 12:5, 40:18
**pattern** [1] - 49:1
**pending** [1] - 5:24
**people** [16] - 13:15, 13:22, 14:16, 14:18, 14:24, 23:7, 23:8, 30:15, 43:20, 45:18,

54:2, 55:8, 56:19, 57:18, 57:21, 58:23
**percentage** [1] - 51:1
**perhaps** [4] - 29:17, 29:25, 40:16
**person** [16] - 16:14, 16:15, 16:23, 16:24, 17:2, 21:24, 27:2, 41:9, 44:17, 45:5, 45:7, 46:23, 46:24, 48:9, 57:16, 60:5
**person's** [1] - 27:15
**personal** [1] - 40:15
**personally** [1] - 39:5
**phenomenon** [1] - 31:19
**phone** [4] - 11:6, 59:4, 59:7, 60:8
**phrase** [1] - 31:11
**physical** [1] - 27:6
**pick** [1] - 35:13
**place** [6] - 6:17, 6:20, 11:21, 15:5, 22:9, 29:4
**placed** [2] - 5:23, 6:2
**places** [1] - 50:11
**Plaintiff** [1] - 1:11
**plan** [5] - 4:7, 15:14, 16:20, 17:13, 41:12
**planning** [2] - 15:13, 15:19
**plea** [2] - 53:21, 54:3
**plead** [2] - 43:6, 54:5
**pleas** [1] - 56:17
**pled** [7] - 34:20, 43:6, 53:22, 54:7, 56:6, 57:11, 57:20
**pocket** [3] - 48:18, 49:6, 49:15
**point** [20] - 21:5, 24:14, 25:11, 25:22, 25:24, 29:20, 30:3, 33:16, 39:24, 40:14, 47:13, 49:19, 52:8, 52:9, 52:11, 52:13, 52:15, 53:7, 61:9
**pointed** [2] - 51:9, 53:3
**police** [20] - 6:17, 11:22, 16:4, 21:23, 29:3, 32:20, 32:22, 32:23, 40:2, 40:13, 42:9, 43:7, 43:12, 43:24, 46:21, 46:22, 47:18, 49:17, 51:17, 51:18
**Police** [11] - 5:12, 5:23, 10:16, 12:1, 14:24, 16:4, 16:13, 45:20, 48:4, 58:12,

58:18
**portion** [8] - 8:25, 25:15, 25:16, 40:15, 41:15, 49:9, 49:23, 53:24
**position** [2] - 20:7, 34:5
**possession** [1] - 55:21
**possibility** [1] - 19:21
**possible** [1] - 9:6
**possibly** [1] - 29:17
**post** [2] - 37:19, 38:9
**potentially** [1] - 32:25
**power** [1] - 49:17
**practical** [1] - 47:7
**practicing** [1] - 38:15
**pre** [1] - 15:13
**pre-planning** [1] - 15:13
**precise** [1] - 59:6
**precisely** [1] - 50:19
**preclude** [3] - 24:10, 52:21, 57:24
**predicate** [2] - 39:11, 39:15
**predicates** [2] - 39:12, 39:15
**predisposed** [1] - 46:8
**predominantly** [1] - 5:4
**preferred** [1] - 58:14
**prejudice** [2] - 29:19, 22:18
**prejudicial** [1] - 24:12
**premature** [1] - 20:4
**prepared** [4] - 21:5, 21:12, 21:16, 22:18
**preposterous** [1] - 55:18
**presence** [2] - 26:7, 27:2
**Present** [1] - 1:20
**present** [12] - 8:19, 8:23, 9:4, 10:19, 13:16, 13:20, 14:24, 29:10, 32:23, 34:1, 36:13, 46:11
**presentation** [2] - 33:6, 33:7
**presented** [4] - 32:16, 33:23, 34:13, 34:14
**presenting** [3] - 17:13, 17:16, 33:12
**preserve** [1] - 37:10
**presides** [1] - 55:19
**pretrial** [6] - 7:2, 24:17, 25:14, 26:10, 37:20, 50:19
**principally** [1] - 32:13

**privy** [1] - 16:9
**probable** [35] - 22:24, 23:12, 26:20, 28:12, 34:16, 35:4, 39:22, 40:7, 40:8, 40:9, 41:25, 42:9, 44:13, 45:6, 46:12, 46:17, 47:2, 47:24, 48:2, 48:8, 49:8, 49:12, 49:13, 49:14, 49:22, 50:1, 50:3, 50:9, 50:15, 50:18, 50:24, 51:3, 51:16, 51:19, 52:7
**problem** [1] - 60:18
**problems** [1] - 50:13
**procedural** [1] - 12:25
**procedure** [2] - 15:4, 41:15
**proceed** [3] - 4:5, 31:1, 56:2
**proceeded** [1] - 14:16
**proceeding** [3] - 8:14, 33:25, 61:19
**proceedings** [1] - 62:9
**PROCEEDINGS** [1] - 3:1
**proceeds** [3] - 41:7, 44:20, 46:24
**process** [4] - 21:4, 21:17, 28:24, 31:2
**produce** [1] - 22:25
**produced** [2] - 20:12, 22:23
**production** [1] - 24:11
**prohibition** [1] - 57:9
**promise** [1] - 18:10
**proof** [1] - 41:11
**proper** [2] - 33:23, 51:19
**properly** [3] - 5:25, 18:4, 53:6
**property** [11] - 22:25, 27:2, 45:18, 46:18, 46:19, 46:21, 47:18, 48:3, 48:8, 48:13
**proposed** [1] - 38:21
**proposition** [1] - 31:6
**provide** [4] - 6:11, 8:12, 9:19, 57:19
**provided** [3] - 20:14, 22:4, 31:23
**province** [1] - 53:17
**public** [2] - 5:6, 34:5
**pulled** [1] - 43:1
**pulls** [1] - 32:23
**purpose** [7] - 16:22, 18:20, 23:2, 23:5, 28:15, 46:19, 53:15
**purposes** [2] - 42:12,

45:21
**PURPURA** [40] - 3:11, 20:22, 20:24, 22:13, 23:16, 23:21, 24:15, 24:20, 25:4, 30:5, 33:15, 34:12, 35:5, 35:17, 36:11, 37:9, 37:13, 37:23, 38:13, 40:6, 41:4, 41:17, 43:12, 43:23, 44:25, 45:4, 45:11, 45:14, 45:22, 45:25, 46:3, 47:10, 51:14, 51:16, 51:24, 52:24, 56:15, 59:21, 59:23, 61:14
**Purpura** [1] - 1:15, 3:12, 19:9, 24:10, 30:18, 31:14, 38:12, 47:17, 55:1, 55:7, 60:10
**pursuant** [3] - 8:13, 51:2, 62:7
**put** [17] - 15:6, 23:6, 25:24, 28:3, 31:17, 33:1, 33:2, 48:5, 48:17, 48:18, 49:6, 49:15, 53:9, 58:5, 59:19, 59:25

## Q

**qualified** [1] - 59:13
**questioning** [2] - 8:20, 8:22
**questions** [9] - 8:7, 8:8, 8:18, 8:23, 9:3, 10:3, 17:3, 17:4, 50:20
**quite** [4] - 18:19, 29:24, 34:19, 35:17

## R

**racketeering** [2] - 48:16, 49:1
**Rafter** [3] - 1:21, 3:12, 3:13
**raise** [1] - 4:14
**raised** [2] - 4:2, 59:11
**rather** [1] - 37:19
**Rayam** [10] - 42:1, 42:21, 43:1, 53:1, 53:9, 55:9, 55:10, 55:14, 57:2
**Rayam's** [1] - 41:20
**re** [1] - 29:17
**re-file** [1] - 29:17
**rea** [1] - 46:25
**reaction** [1] - 14:4
**read** [7] - 7:22, 7:25,

8:5, 8:6, 9:1, 14:19, 25:10
**readily** [1] - 40:20
**reading** [3] - 8:2, 8:3, 36:3
**reads** [1] - 8:25
**real** [1] - 42:19
**really** [16] - 12:9, 19:8, 21:4, 23:10, 33:8, 34:21, 35:17, 37:19, 43:13, 46:24, 47:21, 48:12, 49:18, 52:6, 56:21, 60:1
**reason** [4] - 18:2, 21:9, 53:9
**reasonable** [3] - 21:6, 21:8, 21:18
**reasonableness** [1] - 21:17
**reasons** [3] - 12:8, 29:15, 54:2
**rebuttal** [1] - 60:6
**receipts** [1] - 22:25
**receive** [2] - 15:11, 38:16
**received** [4] - 14:6, 14:15, 25:5, 41:18
**recent** [1] - 26:24
**recently** [1] - 57:25
**recognize** [3] - 6:23, 9:15, 36:2
**record** [7] - 4:19, 18:1, 24:22, 42:6, 56:9, 58:5, 60:15
**recorder** [1] - 13:9
**recording** [3] - 5:25, 7:6, 7:8
**records** [4] - 39:3, 58:22, 59:3, 60:8
**RECROSS** [1] - 2:3
**rectify** [1] - 30:9
**Red** [1] - 42:7
**REDIRECT** [1] - 2:3
**reference** [2] - 54:1, 57:24
**referring** [2] - 52:21, 57:9
**regarding** [2] - 8:13, 16:9
**Registered** [1] - 62:5
**regulations** [1] - 62:11
**related** [2] - 37:7, 58:20
**relating** [1] - 58:1
**release** [1] - 38:11
**relevant** [2] - 22:4, 50:16
**relying** [1] - 35:2
**remain** [2] - 4:14, 8:15

**remedy** [2] - 29:16, 29:18
**remove** [1] - 6:19
**repeat** [2] - 11:5, 24:7
**report** [1] - 50:7
**Reported** [1] - 1:22
**reported** [2] - 62:9
**REPORTER** [2] - 62:1, 62:18
**Reporter** [2] - 1:24, 62:5
**reports** [2] - 22:24, 23:11
**represent** [1] - 3:15
**request** [1] - 39:20
**requesting** [1] - 47:8
**required** [2] - 6:19, 19:4
**requirement** [3] - 32:2, 32:3, 32:8
**requires** [2] - 4:3, 4:6
**reserve** [1] - 50:18
**resisting** [1] - 33:3
**resolved** [3] - 14:5, 18:8, 58:7
**respectfully** [3] - 20:24, 25:10, 28:9
**respecting** [1] - 23:14
**respond** [5] - 6:18, 11:11, 11:22, 12:1, 16:21
**responding** [1] - 13:17
**response** [6] - 18:19, 20:3, 25:6, 25:10, 25:12, 28:3
**responsibility** [1] - 36:15
**rest** [1] - 17:8
**restrained** [2] - 55:8, 57:14
**restroom** [2] - 6:11, 18:8
**retroactively** [1] - 33:18
**reviewed** [4] - 7:7, 25:5, 41:19, 41:20
**RICO** [8] - 19:6, 19:13, 24:23, 39:11, 39:16, 53:23, 53:24, 53:25
**ridding** [1] - 39:2
**rights** [11] - 7:23, 8:1, 8:9, 9:1, 9:2, 9:10, 9:12, 9:19, 14:19, 17:10, 18:4
**ripe** [1] - 20:12
**rise** [1] - 61:17
**River** [1] - 59:9
**RMR** [2] - 1:23, 62:17
**rob** [1] - 50:25

**robbed** [1] - 26:16
**robberies** [15] - 29:11, 42:19, 42:20, 51:8, 52:22, 53:4, 53:7, 54:8, 55:2, 55:4, 55:10, 56:20, 56:23, 57:10, 57:24
**robbery** [63] - 25:12, 25:14, 25:16, 25:25, 26:2, 26:14, 26:18, 26:21, 26:23, 28:6, 29:1, 29:10, 29:12, 29:25, 30:2, 30:3, 31:25, 32:12, 32:18, 34:2, 34:22, 36:8, 39:10, 39:14, 39:15, 39:17, 40:25, 42:25, 43:5, 43:6, 43:23, 46:22, 47:19, 48:11, 48:14, 48:21, 49:4, 49:18, 50:24, 52:3, 52:23, 53:2, 53:17, 53:19, 53:24, 54:1, 54:4, 54:10, 54:13, 54:16, 54:17, 54:18, 54:19, 57:3, 59:6
**role** [2] - 5:15, 12:10
**room** [5] - 5:22, 5:24, 6:3, 6:13, 13:9, 14:18, 14:25, 15:2, 15:12
**ROOSEVELT** [1] - 1:6
**rouse** [1] - 11:17
**route** [1] - 58:14
**routinely** [2] - 6:18, 55:19
**Rule** [1] - 22:23
**rule** [1] - 61:12
**ruling** [2] - 24:7, 36:24
**run** [1] - 33:2

## S

**safety** [1] - 6:20
**Sand** [3] - 28:4, 28:5, 29:12
**satisfied** [2] - 26:13, 32:9
**saw** [1] - 51:4
**scare** [1] - 43:2
**scenario** [2] - 42:5, 42:6
**schedule** [2] - 22:12, 23:1
**school** [1] - 56:18
**search** [3] - 32:22, 41:14, 43:21
**seated** [2] - 3:25, 4:17
**second** [3] - 3:15, 27:18, 27:21, 36:9,

52:25
**seconds** [1] - 8:3
**security** [1] - 21:19
**see** [12] - 19:5, 20:20, 24:16, 26:1, 32:1, 38:25, 42:5, 47:10, 51:12, 51:25, 60:10, 61:15
**seize** [4] - 49:8, 49:16, 51:1, 52:9
**seized** [9] - 40:11, 40:12, 41:9, 47:18, 52:15, 53:6
**seizes** [1] - 25:12
**seizure** [1] - 49:18
**selected** [2] - 5:16, 6:21
**send** [1] - 48:22
**sense** [1] - 18:12
**sensitivity** [1] - 16:11
**sent** [1] - 48:19
**separate** [17] - 5:24, 25:18, 27:12, 27:24, 27:25, 28:5, 28:20, 29:13, 29:14, 34:2, 34:9, 34:15, 34:18, 35:7, 35:10, 35:11, 36:7
**sergeant** [1] - 55:3
**serious** [1] - 27:6
**set** [2] - 27:11, 31:12
**sets** [1] - 27:12
**setting** [1] - 40:6
**settings** [1] - 50:19
**settled** [2] - 31:20, 55:16
**seven** [1] - 21:14
**several** [1] - 58:21
**sex** [1] - 35:9
**short** [1] - 29:18
**show** [9] - 25:22, 34:1, 39:21, 40:10, 46:8, 46:9, 52:4, 58:22, 61:1
**showed** [2] - 15:18, 53:4
**showing** [2] - 6:22, 8:3
**shows** [3] - 18:2, 32:22, 36:4
**Shropshire** [3] - 41:20, 42:1, 42:20
**Siffert** [3] - 28:4, 28:5, 29:12
**sign** [2] - 9:7, 10:1
**signature** [1] - 9:24
**signed** [3] - 9:14, 9:24, 20:25
**silent** [1] - 8:16
**similar** [2] - 14:3,

18:21
**simple** [3] - 25:7, 30:7, 53:7
**simply** [6] - 20:10, 23:5, 31:4, 33:6, 55:7, 59:7
**single** [5] - 25:9, 34:14, 34:18, 36:2, 40:1
**Siracki** [2] - 1:21, 3:8
**sit** [1] - 42:18
**sitting** [2] - 20:15, 59:8
**situation** [2] - 24:14, 54:14
**six** [3] - 21:14, 39:6, 40:9
**sixth** [1] - 36:19
**skip** [1] - 60:19
**skipped** [2] - 60:17, 60:18
**slight** [1] - 6:5
**slip** [1] - 59:9
**sneak** [1] - 48:23
**so-to-speak** [1] - 12:23
**someone** [5] - 10:16, 13:12, 42:2, 52:7, 59:13
**somewhat** [1] - 14:3
**sorry** [5] - 5:8, 13:7, 24:24, 60:16
**sort** [11] - 11:17, 11:18, 14:2, 22:18, 24:14, 34:11, 51:7, 52:3, 55:18, 59:19
**sorts** [1] - 18:9
**sound** [1] - 45:22
**source** [1] - 15:8
**sovereign** [1] - 51:2
**spades** [1] - 23:7
**speaking** [1] - 12:21
**Special** [2] - 4:10, 59:2
**special** [6] - 4:25, 5:11, 15:3, 32:17, 33:10, 59:5
**specific** [2] - 23:4, 23:5, 49:4
**specifically** [1] - 12:24
**spell** [1] - 4:19
**spelled** [2] - 53:22, 53:23
**spent** [2] - 5:7, 15:16
**squarely** [1] - 22:7
**SS** [2] - 46:14, 46:16
**staff** [1] - 14:10
**stand** [2] - 53:1, 60:1
**standing** [3] - 3:20, 3:23, 4:14

**start** [2] - 9:8, 13:7
**started** [1] - 46:6
**starting** [1] - 8:6
**startle** [1] - 43:1
**State** [1] - 49:17
**state** [5] - 4:18, 37:8, 50:23, 51:2, 58:23
**statement** [11] - 4:4, 4:9, 4:11, 9:1, 18:2, 18:12, 21:22, 49:13, 50:1, 50:3, 50:9
**statements** [7] - 7:20, 17:24, 22:24, 23:11, 49:12, 55:5, 61:1
**STATES** [2] - 1:1, 1:3
**States** [7] - 1:13, 3:5, 3:6, 26:4, 35:25, 62:6, 62:12
**Station** [1] - 27:3
**statute** [14] - 19:6, 19:13, 24:23, 27:13, 31:13, 31:15, 31:22, 33:13, 35:10, 35:12, 35:18, 48:14, 53:23, 55:24
**statutes** [3] - 31:19, 35:8, 35:9
**steal** [1] - 45:6
**steals** [1] - 48:9
**stenographically** [1] - 62:9
**stenographically-reported** [1] - 62:9
**step** [2] - 17:12, 47:5
**Steven** [2] - 1:17, 3:19
**still** [5] - 40:12, 40:25, 41:9, 43:15, 52:11
**sting** [1] - 53:11
**stood** [1] - 55:3
**stop** [2] - 8:24, 46:23
**stopped** [2] - 42:2, 49:2
**store** [2] - 26:6, 26:7
**straight** [1] - 27:11
**strangely** [1] - 25:25
**street** [3] - 39:5, 44:14, 54:16
**Street** [1] - 1:24
**stuck** [1] - 54:10
**stupid** [2] - 25:7, 30:7
**subject** [2] - 40:2, 60:24
**subjective** [2] - 39:25, 42:8
**submit** [10] - 17:16, 17:17, 32:17, 33:9, 37:10, 37:15, 38:5, 49:16, 49:20
**submitted** [9] - 28:10, 28:18, 34:5, 34:20,

34:24, 49:3, 49:7, 49:21, 60:9
**submitting** [6] - 18:25, 19:7, 60:14, 60:20, 60:21, 61:4
**subsequent** [3] - 44:19, 45:7, 45:8
**substance** [1] - 13:4
**substantive** [5] - 6:1, 6:4, 21:4, 23:25, 27:23
**suffering** [1] - 18:7
**sufficient** [7] - 17:11, 19:2, 28:2, 28:18, 31:1, 31:12, 31:16
**suggesting** [5] - 26:10, 34:13, 43:9, 52:1, 53:5
**suggests** [1] - 40:22
**summarize** [1] - 5:18
**summary** [1] - 7:10
**superseding** [3] - 19:3, 21:2, 23:4
**support** [1] - 25:13
**supported** [1] - 31:5
**supporting** [1] - 35:15
**suppose** [1] - 41:10
**supposed** [1] - 48:5
**suppress** [1] - 18:2
**Suppress** [4] - 4:4, 4:8, 4:9, 17:24
**Supreme** [3] - 30:24, 31:6, 31:8
**surprise** [1] - 23:10
**surveillance** [1] - 44:4
**survive** [1] - 38:9
**SWAT** [2] - 15:15, 15:16
**sworn** [1] - 4:16

**T**

**tab** [1] - 7:4
**table** [2] - 3:7, 3:12
**tactic** [3] - 6:17, 10:15, 11:20
**tactical** [1] - 5:21
**Task** [1] - 1:21
**task** [4] - 3:7, 16:1, 39:1, 39:2
**TAYLOR** [1] - 1:6
**Taylor** [35] - 1:18, 3:5, 3:23, 4:5, 5:17, 5:19, 5:21, 6:2, 6:16, 7:6, 7:12, 7:14, 7:19, 7:22, 8:4, 9:10, 9:25, 10:12, 10:17, 11:3, 11:6, 12:22, 13:16, 13:24, 14:23, 15:3, 15:9, 15:24, 16:14,

16:16, 16:25, 18:3, 18:16, 55:15, 56:11
**Taylor's** [3] - 4:8, 9:23, 24:22
**team** [4] - 5:21, 10:15, 15:15, 15:16
**technical** [1] - 5:9
**telephone** [1] - 12:13
**temporal** [3] - 40:23, 41:4, 49:4
**ten** [1] - 15:16
**tender** [1] - 59:18
**term** [1] - 34:6
**testified** [6] - 11:20, 13:4, 15:4, 42:1, 42:2, 55:10
**testify** [4] - 41:22, 41:24, 50:14, 55:20
**testifying** [1] - 21:23
**testimonial** [1] - 23:1
**testimony** [10] - 4:3, 14:17, 41:19, 41:20, 42:2, 42:20, 49:9, 58:25, 59:12, 59:18
**THE** [88] - 1:1, 1:1, 1:10, 3:3, 3:10, 3:17, 3:21, 3:24, 4:13, 4:14, 4:17, 4:20, 4:21, 6:8, 10:5, 10:7, 13:6, 17:4, 17:9, 17:17, 17:19, 17:22, 18:22, 19:1, 19:11, 19:25, 20:13, 20:19, 20:23, 23:15, 23:20, 24:4, 24:16, 24:24, 30:2, 30:13, 30:19, 30:21, 31:24, 33:14, 34:9, 35:2, 35:14, 36:5, 36:21, 36:24, 37:3, 37:6, 37:12, 37:16, 37:25, 38:7, 40:4, 41:3, 41:10, 43:11, 43:22, 44:22, 45:3, 45:10, 45:12, 45:15, 45:24, 46:1, 47:9, 47:12, 47:16, 47:21, 47:25, 49:25, 51:13, 51:15, 51:22, 52:18, 54:23, 54:25, 56:8, 56:14, 57:8, 58:8, 59:22, 60:10, 60:16, 60:19, 60:22, 61:11, 61:15, 61:17
**theft** [13] - 39:9, 39:15, 39:17, 40:16, 40:17, 40:19, 40:20, 41:7, 41:8, 44:20, 52:14, 53:20
**thefts** [4] - 21:14, 29:4, 51:6, 51:8

**theory** [11] - 28:25, 29:1, 38:24, 41:1, 42:16, 44:10, 44:23, 45:2, 45:13, 47:25
**therefore** [4] - 19:22, 24:12, 26:12, 56:21
**they've** [1] - 59:10
**thinking** [1] - 20:15
**thinks** [1] - 51:4
**third** [3] - 12:21, 27:23, 36:10
**Thomas** [2] - 1:21, 3:12
**THOMAS** [1] - 1:5
**threat** [20] - 18:10, 21:19, 25:14, 25:16, 26:2, 26:14, 26:18, 26:21, 26:23, 27:18, 29:2, 34:3, 34:4, 34:22, 39:18, 46:1, 53:25, 56:16
**threatened** [4] - 26:8, 27:4, 27:15, 27:21
**threatening** [1] - 27:5
**threats** [2] - 7:14, 7:19
**three** [27] - 17:7, 21:7, 21:18, 27:12, 27:24, 28:5, 28:7, 28:19, 28:23, 29:13, 31:23, 32:3, 32:10, 33:12, 33:22, 34:1, 34:2, 34:9, 34:15, 34:18, 35:7, 36:7, 36:8, 46:10
**three-and-a-half** [1] - 21:7
**throw** [1] - 36:16
**thrust** [1] - 40:7
**tie** [1] - 37:14
**timesaving** [1] - 17:6
**today** [2] - 13:4, 21:18
**together** [1] - 52:12
**tongue** [1] - 56:19
**took** [7] - 4:11, 29:4, 40:24, 42:4, 48:17, 49:2, 49:23
**tools** [1] - 59:5
**top** [1] - 56:23
**tower** [1] - 59:8
**towers** [1] - 60:3
**track** [2] - 23:10, 50:10
**tracks** [1] - 31:15
**training** [4] - 6:18, 11:22, 12:6, 12:7
**transcript** [8] - 7:5, 7:7, 7:10, 12:20, 17:5, 17:10, 62:8, 62:10
**transcription** [1] - 8:1
**transcripts** [3] - 61:6,

61:8, 61:9
**travel** [1] - 58:22
**treated** [1] - 14:4
**trial** [25] - 3:12, 3:15, 18:1, 20:6, 20:12, 20:15, 21:5, 21:13, 23:23, 28:23, 29:18, 29:20, 31:1, 31:10, 37:19, 38:9, 41:20, 42:14, 50:16, 50:18, 54:22, 55:25, 56:3, 57:21, 58:1
**trials** [2] - 21:13, 55:19
**tricked** [1] - 16:18
**tried** [5] - 30:8, 40:19, 43:10, 46:8, 56:25
**trier** [1] - 46:5
**true** [3] - 31:25, 41:1, 62:8
**trying** [3] - 43:2, 47:23, 49:19
**Tuesday** [1] - 1:8
**turn** [7] - 9:15, 30:13, 41:6, 41:7, 45:18, 48:10, 52:14
**turned** [7] - 13:9, 20:6, 40:24, 48:18, 50:5, 50:6, 50:12
**turns** [1] - 51:6
**two** [11] - 20:6, 20:12, 20:14, 22:1, 23:23, 24:8, 25:17, 54:6, 54:10, 56:22, 58:6
**type** [2] - 28:13, 39:10
**types** [1] - 16:10
**typically** [1] - 16:10

**U**

**U.S.C** [1] - 62:7
**ultimate** [1] - 55:13
**ultimately** [1] - 33:3
**Um-hum** [1] - 43:22
**unanimity** [1] - 33:9
**unarmed** [2] - 15:11, 15:17
**unbiased** [1] - 31:9
**under** [13] - 8:9, 11:17, 26:11, 27:23, 29:25, 30:4, 32:14, 36:18, 40:25, 46:17, 51:11, 53:10, 54:14
**underlying** [1] - 31:22
**understood** [3] - 18:4, 19:19, 33:3
**unexpected** [1] - 24:12
**unit** [2] - 48:23, 49:16
**UNITED** [2] - 1:1, 1:3

**United** [7] - 1:13, 3:5, 3:6, 26:4, 35:25, 62:6, 62:12
**unlawfully** [2] - 26:6, 27:1
**unless** [3] - 4:7, 21:16, 41:23
**unnecessarily** [1] - 57:15
**unnecessary** [1] - 56:7
**unreasonable** [1] - 22:19
**up** [16] - 7:9, 9:5, 12:17, 15:6, 15:18, 16:8, 21:8, 21:18, 23:17, 32:22, 33:1, 33:2, 44:16, 49:25, 53:9, 55:3
**upstairs** [1] - 61:15
**ushered** [1] - 5:22

**V**

**V-i-l-c-e-k** [1] - 4:20
**vacation** [2] - 44:1, 44:2
**valid** [17] - 24:9, 30:25, 31:1, 31:9, 31:11, 34:7, 35:5, 35:7, 35:22, 35:23, 41:14, 43:25, 44:23, 45:2, 45:16, 45:17, 49:22
**validity** [2] - 28:19, 33:25
**variants** [1] - 32:10
**vehicle** [2] - 22:3, 22:9
**verdict** [3] - 32:17, 33:10, 33:18
**versions** [1] - 33:12
**versus** [1] - 3:5
**vest** [1] - 49:6
**vested** [1] - 49:17
**viable** [1] - 44:10
**vicinity** [1] - 8:2
**victim** [2] - 23:8, 32:25
**victims** [1] - 49:10
**video** [2] - 5:25, 17:6
**view** [1] - 59:4
**Vilcek** [5] - 2:4, 4:10, 4:20, 4:24, 5:11
**violated** [1] - 35:10
**violating** [1] - 32:4
**violation** [1] - 29:23
**violations** [1] - 8:11
**violence** [12] - 25:14, 25:17, 26:8, 27:4, 27:16, 30:1, 32:15, 32:18, 32:19, 32:23,

36:20, 46:2
**violent** [3] - 5:7, 32:14, 51:10
**volume** [1] - 61:7
**voluntary** [2] - 9:20, 18:12
**voted** [1] - 35:3
**vs** [1] - 1:4

**W**

**wait** [1] - 51:12
**waiting** [1] - 6:13
**waive** [1] - 9:12
**walking** [1] - 44:16
**Ward** [3] - 55:15, 56:12
**warning** [2] - 9:19, 17:10
**warrant** [6] - 32:22, 33:12, 41:14, 45:16, 45:17, 50:4
**warrants** [4] - 50:10, 50:12, 50:13
**waste** [1] - 18:20
**watching** [2] - 14:25, 15:1
**water** [2] - 6:11, 18:9
**watered** [1] - 28:14
**WAYNE** [1] - 1:5
**Wayne** [2] - 1:16, 3:20
**ways** [3] - 26:11, 32:3, 35:9
**weeks** [10] - 20:6, 20:12, 20:14, 21:7, 21:8, 21:18, 22:1, 23:23, 24:8, 28:23
**Westminster** [1] - 43:19
**whatsoever** [2] - 28:17, 41:21
**whole** [1] - 34:25
**WICKS** [20] - 3:22, 6:7, 10:6, 10:9, 13:7, 13:8, 17:15, 17:18, 18:18, 18:25, 19:7, 19:24, 30:20, 38:5, 47:15, 56:9, 60:13, 60:17, 60:21, 61:4
**Wicks** [7] - 1:19, 2:6, 3:23, 10:7, 17:12, 18:15, 24:22
**Wicks's** [1] - 25:1
**William** [2] - 1:15, 3:11
**willing** [2] - 9:3, 9:4
**Wise** [2] - 1:12, 3:7
**wise** [5] - 30:21, 31:24, 47:16, 52:25, 56:10

**WISE** [18] - 3:4, 20:7, 20:18, 21:21, 22:20, 30:22, 32:8, 36:23, 47:17, 47:23, 48:12, 50:6, 55:1, 56:12, 58:4, 58:9, 60:4, 60:12
**wish** [1] - 8:22
**WITNESS** [2] - 2:3, 4:20
**witness** [5] - 4:12, 24:9, 53:1, 58:17, 59:1
**Witness** [1] - 4:16
**witnessed** [1] - 10:1
**witnesses** [7] - 17:13, 17:16, 21:20, 21:22, 21:24, 23:14, 52:21
**word** [8] - 31:15, 32:10, 51:14, 53:2, 55:10, 56:15, 57:15
**words** [3] - 31:13, 55:17, 56:3
**works** [1] - 25:7
**worst** [1] - 45:4
**writing** [1] - 25:6
**writings** [1] - 25:5
**wrongful** [3] - 27:20, 46:1, 46:24
**wrongfully** [1] - 45:18

**Y**

**year** [1] - 10:13
**years** [5] - 5:3, 15:16, 38:15, 46:10, 56:22
**Years** [1] - 21:8
**yourself** [1] - 20:15
**yup** [1] - 51:13

**§**

**§** [1] - 62:7