**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 17-106 |
| WAYNE EARLY JENKINS, | |
| Defendant | |

**RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SENTENCING REDUCTION**

The United States of America, by and through Robert K. Hur, United States Attorney for

the District of Maryland, and Leo J. Wise, Assistant United States Attorney, submits the following

Response to the Defendant Wayne Jenkins's Motion for Compassionate Release / Reduction in

Sentence Under First Step Act Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF Nos. 576, 590, 606,

607 and 608).

Nearly all of the Defendant's *pro se* motion is devoted to describing an incident in prison

in which he claims to have saved the life of another inmate.  It is exclusively on that basis that the

Defendant seeks compassionate release.  Assuming what the Defendant claims is true, it is not, for

the reasons outlined below, justification for a reducing his 25 year sentence by more than 20 years.

Frankly, it was what any decent person would have done.

## I.  PROCEDURAL HISTORY

On February 21, 2017, a federal grand jury sitting in Baltimore returned an indictment

against the Defendant, along with six co-defendants, charging them with racketeering conspiracy,

in violation of 18 U.S.C. § 1962(d) and racketeering, in violation of 18 U.S.C. § 1962(c).  *United*

*States v. Jenkins, et al.*, No. 17-106 (hereafter the "racketeering case").  As the Court well knows,

0

at the time of the indictment, the Defendant, and his co-defendants, were all members of the Baltimore Police Department (BPD) and had abused their positions to, among other crimes, rob civilians they encountered in the course of their official duties and commit overtime fraud.  The Defendant, a Sergeant and the officer-in-charge of the BPD's Gun Trace Task Force, led the conspiracy.

On June 22, 2017, a federal grand jury sitting in Baltimore returned a superseding indictment against the Defendant, along with two co-defendants who had been charged in the original indictment.

On November 30, 2017, a federal grand jury sitting in Baltimore returned a separate indictment against the defendant charging civil rights violations for his role in planting heroin on a defendant after a deadly, high-speed chase.  United States v. Jenkins, Cr. No. 17-638 (hereafter the "civil rights case").

On January 5, 2018, the Defendant entered pleas of guilty to charges in both the criminal cases then pending against him.

On June 13, 2018, the Court sentenced the Defendant to 240 months of incarceration as to Counts 1, 2, 3 and 5, to be served concurrently in the racketeering case and, in the civil rights case, 60 months as to Count 1 and 12 months as to Counts 2 through 5 to run concurrent to the term in Count 1, for a total of 60 months imprisonment on those charges, to run consecutive to the charges in the racketeering case.  All told, therefore, the Defendant was sentenced to a total of 300 months or 25 years in prison.

On August 11, 2020, the Defendant filed a motion for compassionate release in both cases.

II.     **THE LAW**

      **A.  Court's authority to adjudicate motions for compassionate release**

Under 18 U.S.C. § 3582(b), the district court has limited authority to modify a final sentence. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010); *Dillon v. United States*, 560 U.S. 817, 824-25 (2010) (noting that under Section 3582, the Court generally "may not modify a term of imprisonment once it has been imposed"); *United States v. Bro*wn, RDB-16-553, at 2 (D. Md. Mar. 26, 2020) (holding that the Court "may not modify the sentence imposed . . . unless certain limited circumstances arise or as permitted under Rule 35 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3582(c)").

As amended by the First Step Act, Section 3582(c)(1) permits the Court to reduce the inmate's term of imprisonment provided that the inmate has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or the inmate shows "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Nance*, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020).

The Defendant submitted a request for compassionate release to the warden of the institution where he is currently housed which was denied on May 6, 2020. Exhibit 2 to Defendant's Motion for Compassionate Release. Thus, the Defendant has exhausted administrative remedies.

### B.  Grounds for compassionate release.

After exhaustion of administrative remedies, the statute establishes a two-step inquiry:

**First**: The Court must determine if an inmate is eligible[1] for a sentence reduction that is: (A) warranted by "extraordinary and compelling reasons"; and (B) consistent with applicable Sentencing Commission Policy Statements.

**Second**: If the Court finds inmate is eligible for compassionate release, it must then consider whether a sentence reduction is warranted according to the factors set forth in 18 U.S.C. § 3553(a).

*See* 18 U.S.C. § 3582(c)(1)(A); *see also Dillon*, 560 U.S. at 826-27 (holding that parallel language in Section 3582(c)(2) establishes a similar two-step inquiry)).

The burden is on the inmate to demonstrate that she has exhausted administrative remedies and that there are extraordinary and compelling reasons to reduce her sentence. 18 U.S.C. § 3582(c)(1)(A); *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (holding that an inmate, "as the § 3582(c)(2) movant, bears the burden of establishing" eligibility).  Even for those inmates who are statutorily eligible for a reduced sentence, compassionate release is a "rare" and "extraordinary" remedy.  *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019) (holding that "a compassionate release . . . is an extraordinary and rare event."); *United States v. Mangarella*, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

### 1. *Eligibility for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13*

#### a.  18 U.S.C. § 3582(c)(1)(A)(i)

The compassionate release provision of § 3582(c)(1)(A), adopted as part of the Sentencing

---

[1] Certain defendants at least 70 years old are eligible for sentence reductions, a provision not applicable in the instant case. *See* 18 U.S.C. § 3582(c)(1)(A)(ii)

Reform Act of 1984, originally permitted judicial relief only upon a motion by the Director of the Bureau of Prisons ("BOP").  Previously, a defendant could only petition the BOP Director for compassionate release, who could then move the district court for compassionate release.  *United States v. Webster*, 2020 WL 618828, at *1 (E.D. Va. Feb. 10, 2020) (citing U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n. 4 (U.S. Sentencing Comm'n 2018)).

On December 21, 2018, however, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194.  Section 603(b) of that Act amended § 3582(c)(1)(A) to allow defendants, in specified circumstances, to file motions for compassionate release directly with the court of conviction.  *See* First Step Act, § 603(b).  Section 3582(c)(1)(A), as amended by the First Step Act, provides in relevant part:

> (c) Modification of an imposed term of imprisonment. — The court may not modify a term of imprisonment once it has been imposed except that —
>
> > (1) in any case.—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction;
> > > >
> > > > […]
> > > >
> > > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission […].

18 U.S.C. § 3582(c)(1)(A).

As was the case prior to enactment of the First Step Act, § 3582(c)(1)(A) permits compassionate release based on "extraordinary and compelling reasons." *Id*. The Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In other words, once the inmate satisfies the statute's exhaustion requirement, the Court may reduce the inmate's sentence, but only if it finds that the inmate is eligible for compassionate release — that is "extraordinary and compelling reasons warrant such a reduction," and that a sentence reduction is consistent with applicable policy statements, including, as discussed below, that the inmate is no longer a danger to the community. See *Dillon*, 560 U.S. at 826-27 (holding that Section 3582(c) permits a sentencing reduction only when that reduction would be "consistent with applicable policy statements issued by the Sentencing Commission") (citing U.S.S.G. § 1B1.10 (policy statement for Section 3582(c)(2) sentencing reductions)).[2]

### b. U.S.S.G. § 1B1.13 Policy Statement

Because Section 3582(c)(1)(A) permits a sentencing reduction only where "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission," the pertinent policy statement, found at U.S.S.G. § 1B1.13, is binding on the Court. 18 U.S.C. § 3582(c)(1)(A); *see also Dillon*, 560 U.S. at 827 (Because § 3582(c)(2) only permits

---

[2] The Government maintains that Application Note 1 to Section 1B1.13 defines the "extraordinary and compelling reasons" that make an inmate eligible for compassionate release. *See Dillon*, 560 U.S. at 826-27 (holding that the Sentencing Commission's policy statement is binding on the Court). However, the Government is aware that the Court has found those statements not to be binding. *See Mel*, 2020 WL 2041674, at *3.

sentence reductions "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the applicable policy statement is binding).

The Sentencing Commission Policy Statement implementing 18 U.S.C. § 3582(c)(1)(A) states that the Court may reduce a term of imprisonment if it determines that, in relevant part, the requested reduction of the defendant's sentence meets each of three criteria:

> (1) extraordinary and compelling reasons warrant the reduction;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

"[T]he Sentencing Commission is responsible for defining what should be considered extraordinary and compelling reasons for sentence reduction under § 3582(c)(1)(A)." *United States v. Hiller*, ELH-18-389, 2020 WL 2041673 at *3 (D. Md. April 28, 2020) (citing 28 U.S.C. § 994(t)) (further citation and internal quotation marks omitted).  The Commission's Policy Statement, Application Note 1 of § 1B1.13, defines "extraordinary and compelling reasons" as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2),[3] extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ

---

[3]      Subsection (2) of § 1B1.13 establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of Defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 app. note 1.

And, as mentioned above, pursuant to the mandate in § 994(t), Application Note 3 states: "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13 app. note 3.

### c.  BOP Program Statement 5050.50

The policy statement in § 1B1.13 is not the only source of criteria the Court may apply in determining whether "extraordinary and compelling reasons" exist to justify a reduction.  As noted above, Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by

the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 app. note 1(D).  Accordingly, a court may grant compassionate release only on grounds specified by the Sentencing Commission, or those set forth in the relevant BOP regulation governing compassionate release.

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205.[4] Notably, both the Guideline policy statement in § 1B1.13 and BOP Program Statement 5050.50 limit "extraordinary and compelling reasons" for compassionate release to circumstances involving illness, declining health, age, or exceptional family circumstances.

While Program Statement 5050.50 contains standards that are both more extensive than, and slightly different from, those set forth under § 1B1.13(1)(A) of the policy statement, BOP's program statement and determination regarding Petitioner's eligibility for relief is nonetheless entitled to appropriate deference.  *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute") (internal quotation marks omitted).  However, to the extent that the program statement and the policy statement conflict, it is the policy statement – the source directly authorized by statute – that is binding.

---

[4]   Bureau of Prisons Program Statement 5050.50 is available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This program statement was amended effective January 17, 2019, following passage of the First Step Act. It replaces the previous program statement, 5050.49, CN-1.

"[T]he Sentencing Commission is responsible for defining what should be considered extraordinary and compelling reasons for sentence reduction under § 3582(c)(1)(A)". *United States v. Hiller*, ELH-18-389, 2020 WL 2041673 at *3 (D. Md. April 28, 2020) (citing 28 U.S.C. § 994(t)) (further citation and internal quotation marks omitted).[5]

> According to the Commission's Policy Statement, "extraordinary and compelling reasons" exist where
>
> > (A) the defendant is suffering from a terminal or serious medical condition;
> >
> > (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less;
> >
> > (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or
> >
> > (D) "other reasons" as determined by the BOP.

*Id.* (citing U.S.S.G. § 1B1.13 cmt. n. 1(A)-(D)) (further citation and internal quotation marks omitted). "U.S.S.G. § 1B1.13 cmt. n. 1 (D) is referred to as the 'catch-all provision.'" *Id.* (citation omitted).

### d.   Consideration of the Section 3553(a) Sentencing Factors

Even for those inmates who are statutorily eligible for a reduced sentence, compassionate release is a "rare" and "extraordinary" remedy—even after expansion of the statute pursuant to the First Step Act. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *White v. United*

---

[5] The Government maintains that Application Note 1 to Section 1B1.13 defines the "extraordinary and compelling reasons" that make an inmate eligible for compassionate release. *See Dillon*, 560 U.S. at 826-27 (holding that the Sentencing Commission's policy statement is binding on the Court). However, the Government is aware that the Court has found those statements not to be binding. *See Mel*, 2020 WL 2041674, at *3.

*States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019) (holding that "a compassionate release . . . is an extraordinary and rare event."); *United States v. Mangarella*, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

If the Court determines that the inmate is eligible for a sentencing reduction, the Court must then consider whether an exercise of its discretion to reduce the inmate's sentence is warranted according to the factors set forth in Section 3553(a) factors and determine whether to exercise its discretion to reduce the inmate's sentence. *Dillon,* 560 U.S. at 827, 18 U.S.C. § 3582(c)(1)(A).

## III.   THE FACTS

The Defendant is currently incarcerated at FCI Edgefield, a medium security federal correctional institution with an adjacent minimum security camp.  As of 10 a.m. this morning, the BOP reports 2 active cases of COVID-19 involving inmates, out of a total inmate population of 1,466, and 16 involving staff.

More generally, the BOP has taken aggressive action to mitigate the danger of COVID-19. In early 2020, the agency established a COVID-19 working group to develop responsive procedures in consultation with experts from the Centers for Disease Control ("CDC"). On August 5, 2020, the Bureau of Prisons implemented Phase Nine of its Action Plan ("action plan") in order to minimize the risk of COVID-19 transmission into its facilities, extending prior mitigation measures, to include enhanced modified operations for all institutions, and to implement new measures to manage the pandemic.[6]  Phase Ten began on October 1, 2020, extending the efforts

---

[6]   The   BOP's   Phase   Nine   Action   Plan   is   available   at https://www.bop.gov/foia/docs//COVIDphase9_08052020.pdf (accessed August 27, 2020).

previously described in Phase Nine, and is scheduled to remain in place through at least October 31, 2020.[7] The action plan comprises several preventive and mitigation measures, including the following:

**Screening of Inmates and Staff:** All new BOP inmates are administered an approved viral PCR test for COVID-19, and screened for symptoms and risk of exposure. Inmates who test positive and/or are symptomatic will be placed immediately in medical isolation, where they will remain until they meet the CDC symptom or time-based release from isolation criteria. New inmates who test negative and are asymptomatic are placed in quarantine for 14 days, and are not released to general population unless they test negative and are asymptomatic.

**Contractor Access:** Contractor access to BOP facilities is restricted to only those performing essential services (including medical or mental health care) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization from the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

**Quarantine Logistics:** The action plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the screening protocol.

**Suspension of Social Visits and Tours:** BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended for at least the first 30 days that the action plan is in effect.[8]

**Legal Access:** BOP facilities are accommodating telephone and video conferences to the extent possible. Facilities have been instructed that, consistent with standing guidance, legal visits should be accommodated upon request, based on local resources. During in-person visits, inmates and attorneys or other legal visitors should wear face coverings and perform hand hygiene before and after. BOP strongly recommends facilities use Plexiglas or similar barrier between the inmate

---

[7]    The Bureau of Prisons has extended and enhanced its modified operations plans since the onset of the novel coronavirus pandemic, and the government expects these efforts will continue in subsequent phases of the action plan.

[8]    The Phase Ten Action Plan reinstated certain social visitation corresponding to conditions at correctional facilities.

and legal visitor, and practice social distancing in the absence of a barrier. Legal visitors are symptom and temperature screened upon entry, and documents are to be passed without physical contact. Tables, chairs, and other high-touch surfaces are to be disinfected between usages. Inmates in medical isolation for COVID-19 should not have in-person legal visits unless absolutely necessary, and inmates in quarantine should delay visits until after quarantine.

**Inmate Movement:** BOP is taking a number of steps to reduce the risk of COVID-19 exposure and transmission for inmates or staff during inmate movement. Inmates are to be tested for COVID-19 and quarantined for 14 days prior to any transportation. In moving inmates between institutions, BOP is working to avoid movement variables that increase the risk of COVID-19 exposure and transmission, including mandatory face coverings, avoiding multiple stops, and avoiding mixing between inmates being transported and other inmate groups. Inmates who have tested positive are not permitted to travel until they have met the CDC symptom or time-based criteria for release from isolation. Transferred inmates will undergo the same process as new intakes, including COVID-19 testing, screening, and temperature checks. Likewise, all official staff travel has been cancelled, as has most in-person staff training.

**Compliance Reviews:** BOP will be conducting unannounced site visits to ensure institution operations conform to ongoing COVID-19 mitigation guidance and the BOP action plan.

**Modified Operations:** Finally, the action plan requires wardens at BOP facilities to modify operations in order to maximize social distancing.[9]

The measures enumerated in the action plan, and the expansion of COVID-19 testing, are designed to sharply mitigate the risk of COVID-19 transmission into BOP facilities. As communicated to the government, BOP professionals will continue to monitor the path of the virus and adjust its practices as necessary to maintain the safety of BOP inmates. *Raia*, No. 20-1033, at 8 (Third Circuit taking note of the "BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread").

The measures enumerated in BOP's plans are designed to sharply mitigate the risk of COVID-19 transmission into BOP facilities. As communicated to the Government, BOP

---

[9]    Further details are available at bop.gov/coronavirus/covid19_status.jsp, and at the regularly updated resource page, bop.gov/coronavirus/.

professionals will continue to monitor the path of the virus and adjust its practices as necessary to maintain the safety of BOP inmates.  *See Raia*, No. 20-1033, at 8 (Third Circuit taking note of the "BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread").

Further, the legislature, Department of Justice and BOP have recently evidenced their commitment to protecting inmates in light of COVID-19. For instance, in response to the COVID-19 outbreak, Congress expanded the BOP's statutory authority to reduce sentences to home confinement. Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2) (Mar. 27, 2020) (allowing the BOP to "lengthen the maximum amount of time the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2)). Continuing this trend, the Attorney General has ordered the BOP to broadly exercise its authority to reduce sentences to home confinement and protect inmates in BOP custody, taking into consideration inmates' ages, vulnerabilities to COVID-19, and other relevant factors. Attorney General, Mem. for Dir. of BOP, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020) (directing BOP to maximize prisoner transfers to home confinement at FCI Oakdale, FCI Danbury, FCI Elkton and other facilities whose operations BOP determines are materially affected by the virus); Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020). In other words, by policy, regulation, statute, and order from the Attorney General, the BOP is taking seriously the need to protect inmates from this very serious virus.

## IV.   **ARGUMENT**

### A.  **The Defendant is Not Eligible for Compassionate Release**

Fear of contracting the novel coronavirus while incarcerated is not sufficient reason for granting compassionate release. *See Hiller*, 2020 WL 2041673 at *4. "Simply put, the coronavirus is not tantamount to a 'get out of jail free' card." *Id.* (internal citations and quotation

marks omitted). A defendant is only eligible for a reduction in his sentence under 18 U.S.C. §

3582(c)(1)(A) if: (1) extraordinary and compelling reasons warrant the reduction; (2) the

defendant is not a danger to the safety of any other person or to the community, as provided in

18 U.S.C. § 3142(g); and (3) the reduction is consistent with the Sentencing Commission's

Policy Statement. U.S.S.G. § 1B1.13.

    An inmate bears the burden of establishing that a sentence reduction is warranted. *United

States v. Mattingley*, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020) ("the party trying to

change the status quo" has the "burden to prove that he is entitled to a reduction of sentence

under § 3582(c)(1)"); *United States v. Edwards*, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2,

2020) ("A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden

of establishing that such relief is warranted"); *United States v. Heromin*, 2019 WL 2411311

(M.D. Fla. June 7, 2019) (same); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex.

Sept. 25, 2019) (same); *United States v. Karr*, No. 6:17-cr-25-REW, 2020 WL 774363, at *3

(E.D. Ky. Feb. 18, 2020) (same); *United States v. Mitchell*, No. 5:10-cr-50067-001, 2020 WL

544703, at *2 (W.D. Ark. Feb. 3, 2020) (stating that it is the defendant's burden to prove

entitlement to compassionate release); *United States v. Israel*, No. 05-cr-1039 (CM), 2019 WL

6702522, at *9 (S.D.N.Y. Dec. 9, 2019) (same).

   1. ***The Defendant's Health Conditions Do Not Amount to "Extraordinary and
      Compelling Reasons" Justifying Compassionate Release in Light of the
      CDC's Guidance***

    The analysis under the first prong of this three-part inquiry is guided by the CDC's published

risk factors for incurring a severe, life-threatening case of COVID-19.  Currently, the CDC has

broken down inmates into two distinct categories: those that **are** at risk and those that **might be** at

risk.  Those who **are** at an increased risk of contracting a severe, life-threatening case of COVID-19

are those who have:

- Cancer
- Chronic kidney disease;
- COPD (chronic obstructive pulmonary disease);
- A compromised immune system resulting from a "solid organ transplant";
- Obesity, defined as a BMI over 30;
- "Serious heart conditions," including heart failure, coronary artery disease, or cardiomyopathies;
- Sickle cell disease; and,
- Type 2 diabetes mellitus

*Id.*  On the other hand, the following conditions **might** cause an increased risk of contracting a

severe, life-threatening case of COVID-19:

- Moderate to severe asthma
- Cerebrovascular disease
- Cystic fibrosis
- Hypertension
- A compromised immune system from causes other than a solid organ transplant;
- Neurologic conditions, "such as dementia";
- Liver disease
- Pregnancy
- Pulmonary fibrosis
- Smoking
- Thalassemia
- Type 1 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html (last accessed July 31, 2020) [hereinafter "CDC Risk Factors"].

The CDC Guidelines also address the risk factors as they relate to the age of the person

involved.  "As you get older, your risk for severe illness from COVID-19 increases. For example,

people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people

in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The

greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.*

15

a.   Medical Condition of the Defendant

The Defendant does not allege that he suffers from any medical condition that puts him at risk for contracting a severe, life-threatening case of COVID-19.  Ironically, he complains about various steps the BOP has taken to stop the spread of COVID-19 which the Defendant claims violate his constitutional rights.  They do not.

Not only is the defendant unable to establish an enhanced risk of severe symptoms from COVID-19, but he has not established a particularized risk present at FCI Edgefield.

Accordingly, the defendant has neither established a serious medical condition, under the circumstances of the current pandemic, a rampant COVID-19 outbreak at his place of incarceration, or any other extraordinary and compelling reason that might support his early release. Essentially, he is in the same position as all other incarcerated individuals, because they unfortunately are less able to engage in social distancing practices as a result of their confinement. That fact alone, however, is insufficient to justify this Court's invocation of compassionate release. Because the defendant's medical conditions do not put him at any particular enhanced risk from a COVID-19 infection, and because the facility at which he will be incarcerated for the next few weeks has kept its viral transmission largely in check, there is no extraordinary and compelling reason to reduce his nearly-completed sentence.

b.   Age of the Defendant

The Defendant is 37 years old, and therefore not eligible for compassionate release on the basis of age. *See* U.S.S.G. § 1B1.13 cmt. n. 1(B).

c. Family Circumstances

The Defendant has minor children or but does not claim to have an incapacitated spouse. Thus, the Defendant is not eligible for compassionate release on the basis of family circumstances. *See* U.S.S.G. § 1B1.13 cmt. n. 1(C).

#### d. Other Reasons (the "catch-all" provision)

A Defendant who is not eligible for compassionate release on the basis of medical condition, age, or family circumstances, may still be eligible if, *as determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with the other enumerated reasons. *See* U.S.S.G. § 1B1.13 cmt. n. 1(D)(emphasis added). The "catch-all" provision does not create an open-ended loophole in the Policy Statement, rendering every inmate eligible for compassionate release. Rather, the plain terms of the Policy Statement make clear that U.S.S.G. § 1B1.13 cmt. n. 1(D) grants eligibility for compassionate release to inmates for extraordinary and compelling reasons that may not be listed in the Policy Statement—if, and only if, such reasons are determined by the Director of the Bureau of Prisons.

Nowhere in his motion does the Defendant claim that there is any extraordinary and compelling reason *determined by the Director of the Bureau of Prisons* that makes him eligible for release. His claim to have saved the life of another inmate is not a recognized as one. Nor are his complaints about the various restrictions that the BOP has imposed to control the spread of COVID-19 recognized as extraordinary and compelling. Indeed, they are just the opposite.

### 2. *The Defendant is a Danger to the Community*

The defendant is not eligible for a reduction in his sentence because he remains a danger to the community, under the factors set forth in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(2) and cmt. n. 1. In determining whether the defendant poses a danger to the community, the Court shall consider:

> (1) the nature and circumstances of the offense, including whether the offense is a crime of violence or involves a minor victim;

> (2) the weight of the evidence against the defendant;

(3) the defendant's history and characteristics, including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

*See* 18 U.S.C. § 3142(g). Here, each of the factors weighs towards finding that the defendant poses a danger to the community.

*Nature and Circumstances of the Offense:* In his plea agreement, the Defendant admitted to criminal conduct which occurred over a course of many year including robbing civilians that he detained and arrested, selling drugs, breaking into homes and stealing property, committing overtime fraud and planting evidence.  See Plea Agreement ¶¶ 8-70.

*Weight of the Evidence*: The defendant pled guilty to the offense, and admitted to the stipulated facts supporting his plea. The weight of the evidence against him is uncontested.

*Defendant's History and Characteristics*:  The Defendant joined the BPD on February 20, 2003. Sworn members of the BPD must abide by the Law Enforcement Officer's Code of Ethics, which provides, in pertinent part:

> As a Law Enforcement Officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation; the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice. I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department … I recognize the badge of my office as a symbol of public faith and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never

> engage in acts of corruption or bribery, nor will I condone such acts
> by other police officers. I will cooperate with all legally authorized
> agencies and their representatives in the pursuit of justice … I will
> constantly strive to achieve these objectives and ideals, dedicating
> myself before God to my chosen profession . . . law enforcement.

The Defendant was promoted to Sergeant on November 30, 2012.  The Defendant became the

officer-in-charge (OIC) of an SES unit on October 14, 2013.  The Defendant became the OIC of

the GTTF on June 13, 2016.

Over the course of his career with the BPD he led not one but two specialized units that

engaged in criminal conduct at his direction and with his direct involvement.

### 3. *Reduction of the Defendant's Sentence Would be Inconsistent with the Sentencing Commission's Policy Statement*

Prisoners also are not eligible for compassionate release unless the reduction is consistent

with the Sentencing Commission's Policy Statement. U.S.S.G. § 1B1.13(3). As set forth above,

the defendant is a danger to the community. As such, he is not eligible for compassionate release

because a reduction of his sentence would be inconsistent with the Policy Statement. *See id.* His

motion should be denied.

### B.    The Defendant's motion should be denied under the factors set forth in 18 U.S.C. § 3553(a).

And even assuming the Defendant has met the threshold requirements for compassionate

release (a point that the government does not concede for the reasons stated above), the Court

must then consider whether a sentence reduction is warranted according to the factors set forth in

18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *see also Dillon*, 560 U.S. at 826-27

(holding that parallel language in Section 3582(c)(2) establishes a similar two-step inquiry);

*United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). These factors further confirm

that the Defendant's request should be denied.

Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes described in § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).

Here, as the Court wells knows and as summarized in the facts quoted above, the Defendant engaged in a breathtaking violation of the public trust. He and his co-defendant abused their police powers to rob civilians they detained and in some cases arrested. The Defendant stole drugs and sold them back onto the streets of Baltimore through his co-defendant Donald Stepp. The Defendant planted evidence on two innocent men, resulting in years of incarceration for both of them and when he pursued them setting in motion a fatal car crash. And he committed overtime fraud further depleting the resources of the BPD at a time when violent crime is at an all-time high in Baltimore. It is hard to imagine more outrageous criminal conduct or a more serious offense.

The sentence the Court imposed, 300 months, of incarceration was a just punishment. The dramatic reduction that the Defendant requests, is not just or justified. Compassionate release is therefore not indicated under this factor.

Neither would the need for deterrence be served if relief were granted here. The Court's sentence sent an important deterrent message to police officers who face the same incentives that the Defendant faced to abuse the position of trust they hold. Releasing him now would undermine that deterrent message.

There are no unwarranted sentencing disparities between and among the GTTF defendants that have appeared before the Court.  The Defendant's sentence is the longest precisely because he was the leader of the GTTF, its most prolific criminal and he did not cooperate with law enforcement.

The factors set forth in 18 U.S.C. § 3553(a) and policy statement U.S.S.G. § 1B1.13 weigh against the Court granting a compassionate release. Therefore, this Court should decline to modify Defendant's sentence to time-served, as he has requested. Even if he were eligible for compassionate release, which he is not, the Defendant's motion should be denied after consideration of the factors set forth in 18 U.S.C. § 3553(a).

## V.      CONCLUSION

The government respectfully requests that the Court deny the Defendant's motion for a sentence reduction.

Respectfully submitted.

Robert K. Hur
United States Attorney

/s/ *Leo J. Wise*
Leo J. Wise
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served on the Defendant via first class mail.

/s/ *Leo J. Wise*
Leo J. Wise
Assistant United States Attorney